## CHAPMAN et al. v. HOME ICE CO. OF MEMPHIS et al.

No. 9266.

Circuit Court of Appeals, Sixth Circuit.

June 1, 1943.

John H. Franklin, of Memphis, Tenn., (John H. Franklin and A. A. Aspero, both of Memphis, Tenn., on the brief), for appellants.

Julian C. Wilson, of Memphis, Tenn. (Julian C. Wilson and Bertrand W. Cohn, both of Memphis, Tenn., on the brief), for appellee.

Irving J. Levy, of Washington, D. C., and Jeter S. Ray, of Nashville, Tenn., for amicus curiae, L. Metcalfe Walling, Administrator of the Wage and Hour Division, Department of Labor.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The issue in this appeal involves the coverage of the Fair Labor Standards Act of June 25, 1938, 29 U.S.C.A. § 201 et seq., and relates specifically to the employees of a Tennessee company producing ice of which a substantial portion is sold to railroad companies and merchants for refrigeration of perishable commodities moving in interstate commerce, and for refreshment of passengers on interstate trains. The District Court concluded that the work of the plaintiffs in producing such ice was local in its nature and not within the scope of the Act, and so dismissed the suit. From its judgment the plaintiffs appeal.

The court found that the appellee had, since April 17, 1939, operated a number of ice plants in the city of Memphis, manufacturing ice which it sold and delivered in Memphis and Shelby Counties, Tennessee, and that during the time covered by the law it had manufactured and sold 121,-846 tons. Of this ice the greater part was sold and delivered from the appellee's platforms at retail, though it also does a wholesale business, selling to peddlers who resell over various routes in Memphis. In addition to these sales, however, the defendant, during the period, sold 1,404 tons which it placed in crushed form in refrigerator cars for preserving shipments of

perishable commodities moving to other states; 2,605 tons to interstate railroads for the cooling of passenger cars; and 4,283 tons to Memphis merchants for refrigeration of poultry, meats, and fruits shipped by them in interstate commerce. This tonnage included so-called "white ice," a byproduct, not intentionally produced and not ordinarily merchantable but useful in car icing. The plaintiffs contended that under the proofs their employment in the manufacture and delivery of ice, which included ice that went to the railroads for refrigeration of cars, classified them as being engaged in commerce or in the production of goods for commerce. The defendant urged that, since all of its ice was manufactured, sold, delivered, and paid for in Memphis, its business is wholly local in its nature and so an activity not covered by §§ 6 and 7 of the Act.

The court, in a well-developed and painstaking opinion, 43 F.Supp. 424, undertook to consider the meaning and scope of the phrase "in commerce or in the production of goods for commerce," and concluded that the Fair Labor Standards Act is limited in its coverage to those employees who are engaged in commerce per se, or are engaged in the production and handling of goods and merchandise which are intended for sale or for distribution in the business world and across state lines; that the Act did not, as did the National Labor Relations Act, 29 U.S.C.A. § 160 et seq., and other statutes, intend to reach employees in all activities which affect interstate commerce, but only in those which were directly in commerce. Conceding that there may be no shipment of perishable merchandise unless ice is used, and that such icing has a necessary effect upon commerce, it held the defendant's production to be engagement neither in commerce nor in the production of goods for commerce. Producing goods to be sold and delivered to railroads merely to aid them in transporting other goods was but an incidental factor in the operation of the transportation business, and Congress, by the limitations in the Act, had sought not to invade the province of the states in the regulation of wages and hours so as to include indiscriminately the local activities of the people therein.

It is necessary to observe that when the case was decided to wit: January 27, 1942, the court was without the aid of the decisions of the Supreme Court which since have given to the terms of the Fair Labor

Standards Act the broad and liberal connotation held to be in consonance with its clearly perceived purpose, A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. ——; Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. ——, decided January 18, 1943; nor were there available to it the later decisions of the Circuit Court of Appeals in Hamlet Ice Co. v. Fleming, 4 Cir., 127 F.2d 165, and Atlantic Co. v. Walling, 5 Cir., 131 F.2d 518, affirming Fleming v. Atlantic Co., D.C., 40 F.Supp. 654, both dealing with activities of the character of those here involved. In Kirschbaum v. Walling, supra [316 U.S. 517, 62 S.Ct. 1121, 86 L. Ed. 1638], employees were held to be engaged in occupations "necessary to the production" of goods for commerce by tenants in a loft building, upon the rationalization that without light and heat and power the tenants could not engage as they do in the production of goods for interstate commerce, and that the normal and spontaneous meaning of the language by which Congress defined in § 3(j) the class of persons within the benefits of the Act, to wit: employees engaged in producing goods or in any process or occupation necessary to its production included the class of employees there involved in view of their relation to production by the tenants. Warren-Bradshaw Drilling Co. v. Hall, supra [317 U.S. 88, 63 S.Ct. 126, 87 L.Ed. ——], gave added breadth to the liberal connotation ascribed to § 3(j) of the Act when it held that drilling for oil by an independent contractor was a "process or occupation necessary to the production" of oil which was to move in interstate commerce. It pointed to the case of United States v. Darby, 312 U.S. 100, 118, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430, as holding that "production for commerce" as intended by Congress includes "at least production of goods, which at the time of production, the employer, according to the normal course of his business, intends or expects to move in interstate commerce although, through the exigencies of the business, all of the goods may not thereafter actually enter interstate commerce."

We come then to the cases which deal with the production of ice for the purpose of refrigerating the cars of interstate carriers transporting perishable goods. In Hamlet Ice Co. v. Fleming, supra, it was pointed out that ice is clearly within the

connotation of the word "goods," so that if produced with knowledge that its shipment, delivery, or sale in commerce is intended, and it is transported from state to state, the employees engaged in the production come within the scope of § 15(a) (1). Here, as there, it was claimed that the defendant's activities were outside the statutory scheme, because the goods in question are delivered within the state to the ultimate consumer and therefore fall outside the definition of "goods" in § 3(i) of the Act, which reads: " 'Goods' means goods * * *, wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof."

■ It is contended that the railroad companies are here the ultimate consumers of the ice delivered to them within the state, so that the ice company produces nothing and sells nothing within the intendment of the Act. The identical argument was rejected in the Hamlet Ice Co. case as unsound because the goods under consideration were not only the subjects of commerce but entered into the very means of transportation by which the burdens of traffic were borne, and that to exempt the producer would run contrary to the manifest purpose of the Act to eliminate all sub-standard labor conditions in respect to goods produced for transportation in interstate commerce. With this reasoning we agree. It must be remembered that before refrigeration became common practice in the transportation of perishable goods, their consumption was restricted to a relatively short radius from points of origin, and that refrigeration produced an enormous increase in interstate traffic in such goods so that the fruits and vegetables of Florida and California became available to consumers in all parts of the country, as did likewise the products of the sea upon either Coast. It is idle, therefore, to deny that the production of ice intended for refrigeration of perishable merchandise in transportation is not a necessary element of transportation, if, indeed, it is not also a "part or ingredient" in production itself for ultimate consumer use. Moreover, as pointed out in the Hamlet case, the exclusion clause in § 3(i) is intended to apply to goods which have come into the hands of the ultimate consumer after transportation is ended, and after they have been withdrawn from further traffic or sale. The decision in Atlantic Co. v. Walling, supra, was reached by a parity of reasoning though pointing out, without deciding, that the non-inclusion provision of § 3(i) but exempts the ultimate consumer from the penalty of § 15(a) (1), and has no effect in limiting the scope of the Act as to the producers of goods intended for shipment in interstate commerce. In the light of these decisions and the admonition in Overstreet v. North Shore Corporation, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. ——, decided February 1, 1943, that the Fair Labor Standards Act aims at protecting commerce from injury through adjustment of the master-servant relationship by eliminating sub-standard working conditions, we are constrained to hold that the employees of the appellee who were engaged in the production, transportation or delivery of ice intended for servicing interstate facilities were engaged in the production of goods for commerce.

■ We are not unmindful of the fact that a rationalization based upon the doctrine of necessity may, under "The House That Jack Built" technic, lead to absurdity and end by ignoring all practical distinction between "what is parochial and what is national." This fear was clearly expressed by the dissenting Justice in Warren-Bradshaw Drilling Co. v. Hall, supra. But as pointed out in the Kirschbaum case, supra, "the judicial task in marking out the extent to which Congress has exercised its constitutional power over commerce is not that of devising an abstract formula. Perhaps in no domain of public law are general propositions less helpful and indeed more mischievous than where boundaries must be drawn under a federal enactment between what it has taken over for administration by the central Government and what it has left to the States." We must, therefore, likewise content ourselves with abstaining from formulae. It is sufficient to say that the necessity for and the close and substantial relationship of the production here involved to interstate transportation bring it within the area adjudged in the Kirschbaum and Warren-Bradshaw cases as including production of goods for commerce.

Judgment reversed and cause remanded for new trial in conformity herewith.