**WALLING, Administrator of Wage and Hour Division, United States Department of Labor, v. CRAIG et al.**

Civ. No. 630.

District Court, D. Minnesota,
Fourth Division.

June 14, 1943.

Westley W. Silvian and Julius Schlezinger, both of Washington, D. C., and James M. Miller, of Minneapolis, Minn., Attys., United States Department of Labor, for plaintiff.

G. Aaron Youngquist, of Minneapolis, Minn., A. R. English, of Tracy, Minn., and G. P. Smith, of Mankato, Minn., for defendants.

J. A. A. Burnquist, Atty. Gen., and K. D. Stalland, Sp. Counsel, of St. Paul, Minn., amicus curiae for H. J. Hoffman, Commissioner of Highways of State of Minnesota.

JOYCE, District Judge.

On the evidence, the files and records in the case, the briefs and arguments of counsel, and on due consideration, the court makes the following findings of fact, conclusions of law and order for judgment:

### Findings of Fact

#### I.

Defendants, both residents of the State of Minnesota, are partners doing business under the names and styles of Jay W. Craig Company and Craig-Alexander Company, and at all times herein material employed several hundred persons in the repair, maintenance and reconstruction of public roads in the States of Minnesota, North Dakota, South Dakota, Montana, Wisconsin, Wyoming, Iowa, Nebraska and Washington, and in their principal place of business, general offices, warehouse and machine shop located in Minneapolis, Minnesota.

#### II.

Since October 24, 1938, defendants have entered into and performed many and various contracts with the above-mentioned States and political subdivisions thereof for the repair, maintenance and reconstruction of public roads and highways owned by said States or political subdivisions thereof. Generally each section of public road or highway repaired, maintained or reconstructed by defendants and their employees pursuant to said contracts lies wholly within a single State but each of said sections was a part of a network of roads and highways regularly traversed by vehicles operated by common and contract carriers and private persons for the transportation of persons and property from one State to another and to and from foreign countries from and into the United States of America. Many of the contracts per-

formed by defendants and their employees were projects for which Federal aid funds were apportioned to the contracting States pursuant to the Federal Highway Act, Act of November 9, 1921, c. 119, 42 Stat. 212 et seq., 23 U.S.C.A. § 1 et seq.

### III.

The defendants did not compensate many of the employees for work done in excess of 44 hours a week for the period from October 24, 1938 to October 24, 1939, and for work done in excess of 42 hours a week for the period from October 24, 1939 to October 24, 1940, and for work done in excess of 40 hours per week for the period from October 24, 1940 to June 15, 1942, at rates other than regular rates of pay because they claimed that these employees were not within the scope of the coverage prescribed by the Fair Labor Standards Act of 1938, hereinafter referred to as "the Act."

### IV.

Defendants did not fully record the daily and weekly number of hours worked by their employees as prescribed by Section 11(c) of the Act, 29 U.S.C.A. § 211(c), and Title 29, c. V, Code of Federal Regulations, Part 516.

### V.

Defendants did not compensate at the overtime rate of pay prescribed by Sections 7(a) (1), (2) and (3) of the Act, 29 U.S.C.A. § 207(a) (1–3), many of the employees whose status under the Act was an issue in this suit.

The evidence offered raised the question of the applicability of the Act to the following classes of employees performing the duties hereinafter described:

### A. *Persons engaged upon the roadway*

Included within this group were power patrol and power shovel operators who shaped the roadbed prior to the construction of a stabilized base; truck drivers who hauled local materials upon the roadway; power patrol operators and motor graders who spread materials over the highway; operators of mixing machines or traveling plants which mixed and spread materials on the highway; flagmen and pilot car drivers who directed traffic; tank truck drivers who spread water over the surface of the highway; sand spreader operators who operated machines which spread sand and aggregate over the highway; common laborers and others who performed a variety of duties upon the highway including hand brooming and hand shoveling of materials; power roller operators; farm tractor and steel roller operators who operated equipment used to roll the highway; timekeepers who reported hours worked and work performed by employees, and prepared reports involving the amount of bituminous materials on hand and additional quantities needed and the amount of work accomplished each day; and working foremen a substantial part of whose daily and weekly working hours were devoted to the performing of some or all of the functions above enumerated.

### B. *Firemen or boiler operators*

All of the contracts performed by defendants for the maintenance, repair and reconstruction of public roads and highways required the use of bituminous materials. Most of these materials were produced in states other than that in which the contracts were performed, and were shipped by railway tank car usually to a point on the railway nearest the highway upon which the contents of the tank car were to be used. Such materials were purchased in some instances by defendants but generally by the other contracting party. In all instances the defendants directed the shipper as to the time of delivery. The materials in each instance were procured to be used in the performance of work on a specific contract and were required to be delivered by the railway to the siding nearest the road site. Such bituminous materials were transferred by defendants from the railway tank car to a motorized vehicle known as a distributor or to a tank truck and were thence transported by defendants to the road site. At times the railway tank cars were unloaded and transported by defendants shortly after delivery on the siding and at other times the material remained in the railway tank cars for a number of days depending upon the weather and defendants' requirements. A group of employees known as firemen or boiler operators operated boilers or retorts which were connected to the railway tank cars for the purpose of heating the bituminous material therein. The purpose in heating such material was two-fold. Most of the materials were so viscous that heating was requisite to expedite the removal thereof. It was equally important that the materials be heated before their application to the road surface and many of the state highway departments with whom defendants con-

tracted specified that bituminous materials could be applied only after heating. When such materials had been heated to a sufficient degree, they were transferred from the railway tank cars into the distributor trucks or tank trucks.

### C. Distributor truck drivers and tank truck drivers

Certain of defendants' employees operated distributors and tank trucks. The distributor trucks were motor vehicles, moving under their own power and were equipped with an oil heating device to keep the material therein hot while in transit. The distributors were used to transport the bituminous material from the railway siding to the contract site and to apply the material upon the roadway. The tank trucks were used to transport the bituminous material from the railway siding to the scene of operations for use in a mixing device operated upon the roadway known as a "Barber Green." At all times while traveling to and from the railway siding and while distributing such materials, the distributors and tank trucks traveled upon public highways. Such bituminous material is commonly known as asphalt, cut-back asphalt, or road oil.

### D. Office employees

These persons were employed at defendants' principal office in Minneapolis, Minnesota. They ordered materials from other states, kept payroll and other records, operated telephone switchboards, prepared letters and reports to be mailed to other states, received letters and reports mailed from other states, placed telephone calls to other states, typed and forwarded letters and telegrams to other states and opened mail from other states.

### E. Machine shop employees

Throughout the year defendants operated machine shops at Minneapolis, Minnesota, and Billings, Montana, for the purpose of storing, overhauling and repairing the equipment used in their business of repairing, maintaining and reconstructing public roads. Such work is carried on by machinists, mechanics and other employees employed in this establishment both during the season in which defendants and their employees were actively engaged in repair and maintenance of roads and also during the so-called off or dead season when because of adverse weather conditions it is impossible to perform the actual operations at the road site. It does not

certainly appear that the equipment stored, overhauled and repaired during the off season will be again used for the repair, maintenance or reconstruction of public highways or that it is prepared for any certain job or type of work. After storage, repair and overhauling, the equipment may be employed in other activities not connected with the performance of such contracts or it may be sold, traded or scrapped.

### F. Off-the-road employees

In the performance of their contracts, defendants procured pits off the road from which they obtained the materials to build the highway base or surface required by their contracts. This group of employees was engaged exclusively in opening such pits, excavating materials therefrom, screening or mixing the same therein and loading it upon trucks for transportation to the highway under contract or to stock pile off the road. In other instances, defendants' contracts required the production of "plant mix" for application to the highway. In such case, defendants operated bituminous mixing plants off the road where bituminous materials and aggregate were proportioned and mixed to be hauled thence to the road site for application on the highway.

The work of all such employees operating off the road consisted exclusively in the preparation and loading of materials for use within the state on the highway and did not require them to enter upon the highway in question.

### VI.

All of the persons employed in the performance of the aforementioned contracts entered into by defendants with the above-mentioned states or political subdivisions thereof were hired and discharged by defendants who also fixed their rates of pay and hours of work and controlled and directed the manner and performance of their duties.

### VII.

The repair, maintenance and reconstruction of public roads is necessary for the continuous passage of persons and property moving from one state to another or to and from foreign countries from and into the United States of America.

### VIII.

The activities performed by all of defendants' employees whose duties are described in Finding V-A, B, C, D, and E, except those engaged in repair and recon-

ditioning of road repairing equipment and machinery during the "dead season" are necessary to the repair, maintenance and reconstruction of public roads. Further, the duties performed by employees known as firemen or boiler operators and office employees are also necessary to the transportation of goods and trade and commerce between one state and another.

### Conclusions of Law.

#### I.

■ The court has jurisdiction of the parties hereto and of the subject matter of this cause.

#### II.

The court has jurisdiction to restrain violations of Section 15 of the Act by virtue of the provisions of Section 17 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 217, hereinafter referred to as "the Act".

#### III.

■ Public roads and highways traversed by vehicles transporting goods and persons moving from one state to another or to and from foreign countries into and from the United States of America, are instrumentalities of interstate commerce.

#### IV.

■ That employees of the defendants, whether employed on the road site, or as firemen, or as machine shop employees, except as hereinafter stated, or as office employees, performed duties so intimately related to the interstate transportation of persons and property as to be in legal contemplation a part thereof and are consequently within the coverage prescribed by the Fair Labor Standards Act. Furthermore, independently of the aforesaid relationship of the duties of firemen and office employees to the movement in interstate commerce of persons and property traversing public roads and highways by vehicles, such employees are also engaged in commerce within the meaning of the Act because of duties performed in connection with the ordering, receiving and unloading of interstate shipments of goods and in keeping records necessary to interstate transactions.

#### V.

■ Defendants' employees employed off the road and described generally as "off-the-road employees" who produce and prepare local materials as sand, gravel, rock or earth, or who operate stationary off-the-road bituminous plants, are not engaged in the production of goods for commerce or in commerce or in work so closely related thereto as to be practically a part thereof and are not within the coverage prescribed by the Act.

■ Defendants' employees known as distributor operators and bituminous tank truck drivers operating the distributors and tank trucks upon public roads in the transport of the bituminous material, originating outside the state, from the railway tank car to the road site for which it had been destined throughout its interstate journey, and distributing the material upon the roadway, were engaged in interstate transportation and in activities which affected safety of operations within the meaning of the provisions of Section 204, Motor Carrier Act of 1935, 49 U.S.C.A. § 304, and thus were exempted from the provisions of the Fair Labor Standards Act by reason of the provisions of Section 13(b) (1) thereof, 29 U.S.C.A. § 213(b) (1).

■ Employees engaged in the repair and reconditioning of road repairing equipment during the so-called "dead season" have not been shown to be engaged in commerce within the meaning of the Act. The evidence does not clearly establish that the equipment repaired during the "dead season" will be again used for the repair, maintenance or reconstruction of public highways. Some of the equipment such as bulldozers, tractors and trucks may be employed in other activities, such as farm work, which are not within the coverage of the statute, or again may be sold, traded or scrapped.

#### VI.

■ The provisions of the Federal Highway Act, Act of November 9, 1921, c. 119, 42 Stat. 212 et seq., 23 U.S.C.A. § 1 et seq., and the Fair Labor Standards Act of 1938, Act of June 25, 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., are not mutually repugnant. Further, if any repugnancy or inconsistency exists between said acts, the Federal Highway Act must be regarded as being repealed by the Fair Labor Standards Act insofar as it conflicts with the provisions of the latter Act.

#### VII.

■ Defendants' employees are not within the scope of exception provided by Section 3(d) of the Act, 29 U.S.C.A. § 203 (d), because on the merits the evidence fails to show the existence of any employ-

**484**

er-employee relationship between defendants' employees and the contracting states or political subdivisions thereof, and for the further reason that the exemption is an affirmative defense which the defendants' failure to plead or prove did not timely raise.

### VIII.

■ Defendants violated the provisions of Section 15(a) (2) of the Act in employing persons engaged in commerce for hours in excess of the maxima prescribed by Sections 7(a) (1), (2) and (3) of the Act without compensating them at the overtime rates prescribed by the statute.

### IX.

Defendants violated the provisions of Section 15(a) (5) of the Act by failing to keep accurate and adequate records of hours worked by persons in their employ as required by Section 11(c) of the Act and Title 29, c. V, Code of Federal Regulations, Part 516, issued pursuant thereto.

### X.

Plaintiff has shown cause for the issuance of a judgment enjoining and restraining violations of Section 15 of the Act.

### XI.

Nothing in these findings of fact or conclusions of law shall be deemed to or shall constitute an adjudication of the rights or liabilities of the defendants toward any individual employee as respects any overtime compensation which is claimed or may be claimed due by any such employee.

A judgment may be entered accordingly.

The entry of judgment herein shall be stayed for 60 days from and after June 7th.