## McCOMB v. TRIMMER et al.

### Civ. No. 118-49.

United States District Court
D. New Jersey.
July 26, 1949.

William S. Tyson, Solicitor, Washington, D. C., Francis v. LaRuffa, Brooklyn, N. Y., United States Department of Labor, for plaintiff.

Anthony M. Hauck, Jr., Clinton, N. J., for defendants.

FORMAN, District Judge.

The plaintiff, William R. McComb, Administrator of the Wage and Hour Division, United States Department of Labor, brought this action under the Fair Labor Standards Act of 1938, Act of June 25, 1938, c. 676, 29 U.S.C.A. § 201 et seq., to enjoin defendants, LaMont Voorhies Trimmer and Donald R. Trimmer, individually and as copartners doing business under the name and style of Trimmer Stone Company, from violating the provisions of §§ 15 (a) (2) and 15(a) (5) of the Act, 29 U.S.C. A. § 215(a) (2, 5).

Following a pretrial conference pursuant to Rule 16 of the Federal Rules of Civil Procedure, 28 U.S.C.A. an order was entered upon the stipulation of the parties in which the following facts were admitted as to the issue framed by the complaint and answer in this case:

"Defendants, LaMont Voorhies Trimmer and Donald R. Trimmer, are now, and at all times hereinafter mentioned were, co-partners doing business under the firm name and style of Trimmer Stone Company, having their principal office located in Flemington, in the County of Hunterdon, State of New Jersey, and having their plant, stone quarry and shale pit located in the County of Hunterdon, State of New Jersey. The defendant, LaMont Voorhies Trimmer resides in the Town of Clinton, County of Hunterdon, State of New Jersey, and defendant Donald R. Trimmer resides in Pattenburg, Hunterdon County, State of New Jersey, and defendants are now, and at all times hereinafter mentioned were, engaged at the said plant and place of business in the County of Hunterdon, State of New Jersey, in the quarry industry, and in the mining, crushing and sale of stone, shale, gravel and sand.

"Defendants employed and are employing approximately seven employees in and about the said plant, quarry, pit and place of business, located in the County of Hunterdon, State of New Jersey, and said employees are engaged in the production of crushed stone, shale, gravel and sand, and in processes and occupations necessary thereto. Substantial quantities of the aforementioned goods produced by the said employees have been and are being used for building, repairing and maintaining roads and the activities and operations of

the said employees are performed as follows:

"A portion of the side of the mountain in said stone quarry is lined with dynamite and exploded. When the portion has collapsed and settled, defendants' employees use a crane shovel to lift the stone and load the company trucks to carry the stones to the crushers, which crushers are located within the quarry. The stone is there dumped into the crushers which crush and break up the huge stones and direct and eject the broken stones across screens which filter and collect the stones according to size. The stones fall down chutes into bins which are higher than truck level and a truck owned by the county pulls up under a bin where a trap door arrangement at the bottom of the bin releases the stone and loads the truck. Defendants' trucks do not deliver the stone to the job site of roads; they only haul the blasted stone to the crusher. The stone is sold by the ton, and is picked up, as aforesaid, by trucks owned by Hunterdon County and delivered to the maintenance site of roads. The stone is used in the maintenance, repair and reconstruction of highways carrying interstate trade and commerce.

"Defendants also operate a shale pit near Clinton, New Jersey and defendants' employees at this site are engaged in the following activity:

"The shale is picked up by a crane shovel and loosened; then loaded into a truck. The shale is sold by the truck load and trucks owned by the county haul the same to the job sites where it is used primarily for the maintenance of shoulders along highways and roads carrying interstate trade and commerce.

"None of defendants' aforementioned goods is sold directly out of the state.

"The defendants' employees employed in and about the said quarry and pit have been employed since May 26, 1946, and are presently employed for workweeks longer than forty (40) hours and these said employees are not compensated for their employment in excess of forty (40) hours in said workweeks at rates not less than one and one-half times the regular rates at which they are employed.

"On October 21, 1938, the Administrator of the Wage and Hour Division, United States Department of Labor, pursuant to the authority conferred upon him by Section 11(c) of the Act [29 U.S.C.A. § 211(c)], duly issued and promulgated regulations prescribing the records of persons employed and of wages, hours and other conditions and practices of employment to be made, kept, and preserved by every employer subject to any provision of the Act. The said regulations, and amendments thereto, were published in the Federal Register and are known as Title 29, Chapter V, Code of Federal Regulations, Part 516.

"Defendants since May 26, 1945, have failed to make, keep and preserve adequate and accurate records of their employees and the wages, hours and other conditions and practices of employment maintained by them as prescribed by the Regulations set forth in paragraph VII above, in that the records which are kept by the defendants failed to show adequately and accurately the hours worked each workday and each workweek, the regular rate of pay, the basis on which wages are paid, the total straight time earnings for each workweek and the total weekly overtime excess compensation with respect to their said employees."

It was further stipulated between the parties that the issue of law for determination is as follows:

"Plaintiff contends that defendants' employees who are engaged in producing gravel and shale for use on instrumentalities of interstate commerce, and employees engaged in any process or occupation necessary to such production, are covered by the Act because they are engaged in the production of goods *for* commerce within the meaning of Section 7 and 3(j) of the Act. [29 U.S.C.A. §§ 207, 203(j)].

"Defendants maintain that the goods produced by the said employees have not been, nor are they being produced *for* interstate commerce since the operations of the defendants' business are conducted wholly within the state and are not in any

way connected with interstate commerce." (Italics supplied.)

Plaintiff refers to many cases which support the theory that employees engaged in the repair, maintenance and improvement of existing instrumentalities of interstate commerce are engaged "in" commerce within the meaning of the Act. Overstreet v. North Shore Corp., 218 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Pedersen v. J. F. Fitzgerald Const. Co., 318 U.S. 740, 742, 63 S.Ct. 558, 87 L.Ed. 1119; Walling v. McCrady Const. Co., 3 Cir., 156 F.2d 932; Walling v. Patton-Tully Transp. Co., 6 Cir., 134 F.2d 945; Bennett v. Loftis Co., 4 Cir., 165 F.2d 286; McComb v. Carter, D.C., 8 W.H. Cases, 498.[1]

Obviously—and the plaintiff concedes it —since the defendants' employees are not engaged directly upon, or associated with any instrumentality of commerce itself, as in the foregoing cases, they are not engaged "in" commerce. Therefore the plaintiff seeks in this case to extend the coverage of the Act to these employees on the theory that since they are employed in producing gravel and shale for use in the repair and maintenance and improvement of county highways, concededly instrumentalities of commerce, they are engaged in the production of goods *for* interstate commerce within the scope of the Act. The plaintiff took the view that certain decisions influenced the Administrator of the Wage and Hour Division, United States Department of Labor, toward such broader coverage. They are Armour & Co. v. Wan-

tock, 323 U.S. 126, 131, 65 S.Ct. 165, 89 L. Ed. 118; McLeod v. Threlkeld, 319 U.S. 491, 493, 63 S.Ct. 1248, 87 L.Ed. 1538; Convey v. Omaha Nat. Bank, 8 Cir., 140 F.2d 640. He accordingly enunciated a new policy on this basis in his Release A–14, issued March 1945 W.H.Man.1947. He contends that this view follows the plain meaning of the statutory language and the decisions of the court but was also induced by the decisions in the so-called "ice company cases".[2]

The defendants, on the other hand, contend that their employees are not within the contemplation of the Act or the cases heretofore decided. On the contrary, it is their view that in the cases so far decided which can be said to be analogous to the facts in this case their employees fall into that area in which workers have been held to be so called "off the road" employees engaged in work not so closely related to commerce as to be practically a part thereof. Walling v. Craig et al., D.C., F.Supp. 479 and Crabb v. Welden Bros., D.C., 65 F.Supp. 369.

In Armour & Co. v. Wantock, supra, the United States Supreme Court held that employees of a soap manufacturer hired to act as private firemen to supplement the fire fighting force provided by the City of Chicago were employed in an occupation necessary to the production of goods for interstate commerce. In McLeod v. Threlkeld, supra, the Supreme Court held that an employee whose work is to prepare meals and serve them to maintenance of way em-

---

[1] Oral opinion.

[2] General Statement as to the Coverage of the Wage and Hour Provisions of the Fair Labor Standards Act of 1938, issued July 1947, 29 C.F.R. Part 776; 12 F.R. 4583, Section 776.7 paragraph (c), as follows:

"* * * The courts have indicated that goods are produced 'for commerce' even though they do not subsequently leave the State, if they are produced in order to supply the needs of interstate commerce, or to serve as an essential part of such commerce, or to aid or facilitate the carrying on of interstate commerce by essential instrumentalities or facilities of commerce such as interstate railroads, highways, telegraph or telephone systems, pipe lines, airports, har-

bors, and the like. For example, employees must be considered engaged in the production of goods for interstate commerce when engaged within a State in such activities as producing ice, electric energy, railroad ties, crushed rock, bituminous aggregate, ready-mixed concrete, telephone and telegraph poles, or other similar items for use or consumption wholly within the same State by interstate railroads, telegraph or telephone companies, etc., in carrying on interstate transportation or communication; or for use or consumption within that State in the maintenance, repair, or reconstruction of essential instrumentalities of interstate trade, commerce, transportation, transmission or communication."

ployees of an interstate railroad pursuant to a contract between his employer and the railroad company is not "engaged in commerce" within the meaning of the Act. In Convey v. Omaha National Bank, supra, the United States Court of Appeals for the Eighth Circuit held that where a national bank owned an office building and occupied a portion thereof and rented other parts to tenants, some of whom were engaged in interstate commerce, cleaning, janitor and maintenance employees of the bank were not so closely related to functions of various businesses carried on in the building so as to amount to the engagement "in commerce" contemplated by the Act.

The so-called "ice company cases" referred to by the plaintiff and other similar cases were called to the attention of the United States Court of Appeals of the Tenth Circuit in the case of E. C. Schroeder Co. v. Clifton, 1946, 153 F.2d 385. The "ice company cases" were aptly summarized in the opinion of Circuit Judge Bratton in the following language: "In all of them, the ice company produced ice and sold it to a railroad company, an express company, or other like agency, for icing refrigerator cars, icing dining cars, icing shipments of less than car lots, or other similar purpose; and the major contention of the ice company was that since it sold the ice at the point of production to the transportation company, the production was local and therefore its employees were not within the coverge of the Act. That contention was rejected. But in wide difference from the facts here, it affirmatively appears in three of those cases and is fairly inferable in the fourth, that some of the ice actually moved across state lines before being consumed by use or otherwise, and that it was produced and sold with knowledge and intent that it would move in that manner. It is true that in Atlantic Co. v. Walling. [5 Cir., 131 F.2d 518], supra, the court said in effect that the production of goods for commerce, within the meaning of the Act, includes the production of goods for use by an instrumentality of interstate commerce as an essential part of such commerce, even though the particular goods produced do not move in commerce. But the Act does not speak of the production of goods for an instrumentality of commerce as distinguished from commerce itself. The Act is to be accorded a liberal construction. But the function of the judicial interpretation of a statute is to bring out and give effect to that which is already in it, latent or otherwise. It is not to add new provisions, substantive or otherwise, which the legislative tribunal in the exercise of its permitted choice omitted or withheld. If Congress had intended to extend the coverage of the Act to employees engaged in the production of goods for a railroad or other instrumentality of interstate commerce, even though the goods were not to move in commerce, it certainly would have employed apt words to express the intention. We fail to find anything in the language of the Act or its legislative history which lends support to the view that Congress purposed to bring workmen of that class within the coverage." 153 F.2d at pages 389, 390.

The cases brought forward by the plaintiff and his arguments here are no more persuasive than they were to the court in the Schroeder case. It concluded as to employees similarly engaged to those in this case as follows: "Here, it was not intended that any of the cushion gravel and riprap would ever move in interstate commerce. It was understood from the beginning that it would be produced, processed, and transported to points on the relocated segments of the railroad and the highway, all within the same state. The work of the employees in question, either separate and distinct or as an integral part of the integrated effort, did not have for its purpose the production or manufacture of any goods or commodity for movement in interstate commerce. Their work was not directed to the production or manufacture of anything for commerce, within the meaning of the Act. They were engaged in local business. 10 East 40th St. Bldg. v. Callus [325 U.S. 578, 65 S.Ct. 1227, 89 L. Ed. 1806, 161 A.L.R. 1263], supra; Rucker v. First National Bank of Miami [10 Cir., 138 F.2d 699], supra." 153 F.2d at page 389.

In the case of Walling v. Craig, supra [53 F.Supp. 481], cited by the defendants the court considered the claim of coverage by the Act made on behalf of a large number of employees of a road repair and reconstruction company. The court classified the employees as follows:

"A. Persons engaged upon the roadway." (In this category it placed power patrol and power shovel operators, truck drivers, etc.)

"B. Firemen or boiler operators."

"C. Distributor truck drivers and tank truck drivers."

"D. Office employees."

"E. Machine shop employees."

"F. Off-the-road employees."

In this latter category it included employees who were engaged exclusively

"in opening such pits, excavating materials therefrom, screening or mixing the same therein and loading it upon trucks for transportation to the highway under contract or to stock pile off the road. In other instances, defendants' contracts required the production of 'plant mix' for application to the highway. In such case, defendants operated bituminous mixing plants off the road where bituminous materials and aggregate were proportioned and mixed to be hauled thence to the road site for application on the highway.

"The work of all such employees operating off the road consisted exclusively in the preparation and loading of materials for use within the state on the highway and did not require them to enter upon the highway in question." 53 F.Supp. at page 482.

Concerning these employees the court formulated the following conclusions of law: "Defendants' employees employed off the road and described generally as 'off-the-road employees' who produce and prepare local materials as sand, gravel, rock or earth, or who operate stationary off-the-road bituminous plants, are not engaged in the production of goods for commerce or in commerce or in work so closely

related thereto as to be practically a part thereof and are not within the coverage prescribed by the Act." 53 F.Supp. at page 483.

It is true that this case was decided by a district court in 1943 and antedates the policy promulgated by the Administrator of Wages and Hours Division of 1945. Neither that fact nor the disagreement with the decision by the plaintiff detract from its logic.[3]

In the case cited by defendants, Crabb v. Welden Bros., supra, Crabb and other plaintiffs sued as employees of the defendants, road construction contractors, to come within coverage of the Act for services rendered on the Alcan Highway in Alaska. The court found that no employee was engaged in the production of goods for interstate commerce, for the construction of the highway was not the producing of goods and cited the case of Nieves v. Standard Dredging Corporation, 1 Cir., 152 F.2d 719, 720. Some of the employees were permitted to recover under the Act as workers engaged in interstate commerce. Crabb failed to recover and the court held: "Mr. Crabb, however, has not established that he was so engaged in interstate commerce. He was not working on the highway or directly carrying supplies to and for it. He was what is known in the authorities as an 'off the road employee' and was not so closely connected with the commerce and transportation as to be a part of it. McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538; Industrial Accident Commission of State of California v. Davis, 259 U.S. 182, 42 S.Ct. 489, 66 L.Ed. 888; E. C. Schroeder Co. v. Clifton, 10 Cir., 153 F.2d 385; Hallstein v. Pennsylvania R. Co., 6 Cir., 30 F.2d 594; Walling v. Craig, D.C., 53 F.Supp. 479, 482; Oliphant v. Kaser Construction Co., decision by Judge Hays in the District Court of Iowa in and for Dallas County." 65 F.Supp. at page 375.

Again the plaintiff voices disagreement with this decision. Nevertheless it gave logical recognition to the "off the road"

---

[3] Approval of other holdings of this case was noted in Welling v. McGrady Const. Co., 156 F.2d 932, at page 935. Third Circuit Court of Appeals.

doctrine and is in that respect akin to the situation of the workers in the case sub judice.

The business in which defendants' employees are engaged is local in nature. Ultimately its product will be employed upon highways carrying interstate commerce. There is no immediacy to commerce on their part. The material they produced is picked up on the premises of the defendants in trucks of, and by, the county, hauled to highways where needed, and they have nothing to do with its transportation or its final incorporation into the highways. There is no more reason to say that they are engaged in the production of goods for commerce than to say they are engaged in commerce. They come strictly within the classification well adopted by other courts of "off the road" employees and are not contemplated for coverage by the Act. Hence there must be judgment in favor of the defendants.

### Findings of Fact.

The facts are found as stipulated and set forth herein.

### Conclusions of Law.

1. Defendants' employees are not engaged in the production of goods for commerce within the purview of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq.

2. Defendants have not violated the provisions of §§ 15(a) (2) and 15 (a) (5) of the said Act.

3. Judgment should be entered in favor of the defendants.