**TOBIN v. ALSTATE CONST. CO.**

No. 10464.

United States Court of Appeals
Third Circuit.

Argued Nov. 16, 1951.

Decided April 9, 1952.
Rehearing Denied May 5, 1952.

---

S. A. Schreckengaust, Jr., Harrisburg, Pa. (McNees, Wallace & Nurick, Harrisburg, Pa., on the brief), for appellant.

William A. Lowe, Washington, D. C. (William S. Tyson, Sol., Bessie Margolin,

Asst. Sol., and Joseph D. Mladinov, Attorney, United States Department of Labor, all of Washington, D. C., Ernest N. Votaw, Regional Atty., United States Department of Labor, Philadelphia, Pa., on the brief), for appellee.

Before MARIS, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

Where an employer is engaged in the production and application of a bituminous material used in the repair and maintenance of highways over which interstate commerce moves, are those off-the-road employees who perform work essential to the production of the material "engaged in commerce or in the production of goods for commerce" within the meaning of the Fair Labor Standards Act of 1938, 29 U. S.C.A. § 201 et seq.?

The question is presented by the instant appeal from the judgment of the District Court for the Middle District of Pennsylvania enjoining violations by Alstate Construction Company ("Alstate") of Sections 15(a) (2) [1] and 15(a) (5) [2] of the Act, 52 Stat. 1060, as amended, 29 U.S.C.A. § 201 et seq. The facts are stated in detail in the opinion of the court below, 1951, 95 F.Supp. 585, 589. They may be summarized as follows:

Alstate is engaged in the production, sale, distribution and application of a bituminous concrete material, known as amesite, which is used to resurface and repair streets, highways, railroad crossings and industrial facilities. The material is processed at three plants, located in Pennsylvania, and then applied by Alstate's employees. During the period under consideration (June 30, 1945, through June 30, 1948) over eighty-five per cent of the material was used (1) on interstate roads or roads carrying interstate traffic, or (2) by interstate railroads or industrial concerns producing and shipping goods in interstate commerce. Alstate employs various classes of employees at its plants and at the site of its operations. Laborers rake the amesite on the highways; at the plants, off-the-road employees, including mixers, firemen, watchmen and clerks, perform tasks essential to the production of the material. Most of these employees are regularly employed in excess of forty hours per week without receiving overtime wages, in violation of the Act; [3] prior to January 1, 1948, Alstate failed to keep proper records as required by regulations promulgated under the Act. [4] This action was brought by the Administrator [5] to enjoin continued violations. In the proceedings below, most of the facts were stipulated by the parties, and additional testimony was submitted. The District Court concluded "that the various plants of the defendant were all component parts of an integrated unit, eighty-five and one-half per cent. of whose total output was directed toward the improvement of various interstate facilities, and that all of the employees of the defendant are definitely within the scope of the statute."

Alstate concedes that those of its employees who actually apply the amesite to

1. Prohibiting violations of the minimum wage and maximum hour provisions of the Act.

2. Prohibiting violations of the record-keeping provision of the Act.

3. Section 7(a) of the Act provides:
"No employer shall * * * employ any of his employees who is engaged in commerce or in the production of goods for commerce * * * for a workweek longer than forty hours * * * unless such employee receives compensation for his employment in excess of (forty) the hours * * * at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C.A. § 207(a).

4. Section 11(c) of the Act provides:
"Every employer * * * shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order * * *." 29 U.S.C.A. § 211(c). See also 29 C.F.R. Part 516.

5. The Secretary of the Department of Labor was substituted as a party plaintiff by stipulation.

the highways or other instrumentalities of commerce are within the scope of the Act; but contends that its off-the-road employees, i. .e., the mixers and other plant employees who produce the amesite, do not have such immediacy of participation in interstate commerce so as to bring them within its coverage. We cannot subscribe to this contention.

■ While the precise question has never been passed upon by an appellate court,[6] analysis of the language of the Supreme Court in recent cases arising under the Act leads inevitably to the conclusion that coverage was intended for off-the-road employees such as are here involved. By its terms, the Act applies to all employees "engaged in commerce or in the production of goods for commerce". This clause was construed by the Supreme Court, in Roland Electrical Co. v. Walling, 1946, 326 U.S. 657, 663, 66 S.Ct. 413, 416, 90 L.Ed. 383:

> "This does *not* require the employee to be directly 'engaged in commerce' among the several states. This does *not* require the employee to be employed even in the production of an article which *itself* becomes the subject of commerce or transportation among the several states. It is enough that the employee be employed, for example, in an occupation which is necessary to the production of a part of any other 'articles or subjects of commerce of any character' which are produced for trade, commerce or transportation among the several states."

■ The Supreme Court has also held: "Vehicular roads and bridges are as indispensable to the interstate movement of persons and goods as railroad tracks and bridges are to interstate transportation by rail. If they are used by persons and goods passing between the various States, they are instrumentalities of interstate commerce." Overstreet v. North Shore Corp., 1943, 318 U.S. 125, 129, 63 S.Ct. 494, 497, 87 L.Ed. 656.

■ Applying these principles, we are of the opinion that Alstate's off-the-road employees, in producing material which is used to repair and maintain the surfaces of instrumentalities of commerce, are engaged "in the production of goods for commerce". The same rationale was employed by the Court of Appeals for the Fifth Circuit in Atlantic Co. v. Walling, 1942, 131 F.2d 518, in holding that the Act applied to employees who manufactured ice to refrigerate railroad cars transporting other commodities in interstate commerce, the ice being consumed in transit; and in Lewis v. Florida Power & Light Co., 5 Cir., 1946, 154 F.2d 751, in which it was held that an employer engaged in the production of goods for commerce by furnishing electricity to others who used it to transmit interstate messages and in the operation of interstate facilities.[7]

---

**6.** E. C. Schroeder Co., Inc., v. Clifton, 10 Cir., 1946, 153 F.2d 385, relied upon by Alstate, is not in point. It involved the application of the Act to employees engaged in the production, at the quarry, of rock which was later used on railroad and highway projects. However, the segments of railroad and highway on which the rock was used were not part of existing systems, but were new segments, not yet dedicated to use in interstate commerce and clearly beyond the contemplation of the Act. Kelly v. Ford, Bacon & Davis, Inc., 3 Cir., 1947, 162 F.2d 555.

The District Courts which have considered the problem have not been in agreement. See, for example, McComb v. Trimmer, D.C.N.J.1949, 85 F.Supp. 565. Contra: McComb v. Carter, Civil No. 745, E.D.Va., July 31, 1948 (16 Labor Cases § 69,964). The point was considered in Walling v. Craig, D.C., Minn., 1943, 53 F.Supp. 479, 483; and decided in favor of Alstate's position. However, this was before the Administrator's assertion, based upon the Circuit Court decisions in the so-called "ice cases" (see footnote 7 infra), that these employees were covered. See 29 C.F.R. § 776.21(b) (1950 Supp. 149).

**7.** See also Hamlet Ice Co. v. Fleming, 4 Cir., 1942, 127 F.2d 165, certiorari denied, 317 U.S. 634, 63 S.Ct. 29, 87 L.Ed. 511; Chapman v. Home Ice Co. of Memphis, 6 Cir., 1943, 136 F.2d 353, certiorari denied, 320 U.S. 761, 64 S.Ct. 72, 88 L.Ed. 454.

With respect to Alstate's contention that the sweep of the injunction is too broad in that it covers all of Alstate's employees, including those engaged in original construction and private projects unconnected with interstate commerce, it is answered by the very language of the injunction. The latter applies only to those "engaged in interstate commerce or in the production of goods for commerce, *within the meaning of the Act*". (Emphasis supplied.) The District Court found that, during the period involved, none of Alstate's work on interstate facilities involved original construction, and that there was no segregation of work performed by the off-the-road employees. In doing so it specifically held, and properly so, that "original construction is definitely beyond the contemplation of the Act." As long as any individual employee spends a substantial part of the work-week in commerce or in the production of goods for commerce, he is entitled to the full benefits of the Act. Southern California Freight Lines v. McKeown, 9 Cir., 1945, 148 F.2d 890. At present, all of Alstate's employees fall into this category.

For the reasons stated, the judgment of the District Court will be affirmed.