**WALLING, Adm'r of Wage and Hour Div., U. S. Dept. of Labor, v. McCRADY CONST. CO.**

**No. 9001.**

Circuit Court of Appeals, Third Circuit.

Argued May 7, 1946.

Decided July 23, 1946.

McLAUGHLIN, Circuit Judge.

This is an appeal from a decision of the District Court[1] granting an injunction against violation of the wage and hour provisions of the Fair Labor Standards Act.[2]

The litigation originally involved some fifty-eight contracts classified under six heads: 1. Public highways, roads and bridges. 2. Motor carrier terminal facilities. 3. Telephone facilities. 4. Railroad facilities. 5. Industrial plant facilities. 6. Loading ore and stone. The motor carrier and the ore and stone matters have now been conceded by the appellant as coming within the statute as are certain other of the contracts having to do with repair work.[3]

The first group of contracts concerned appellant's employees working on public roads, streets and bridges. The jobs included removal of old paving and replacement thereof with new; curbing, sidewalk and drainage construction; relocation of a portion of a county road, new bridges in different locations from the old with new approaches to one of them and widening a street. The particular highways, roads and streets were either United States highways or connected with them or other interstate highways. They were all accessible to and used to a substantial extent by interstate traffic, by vehicles engaged in the pickup and delivery of mail express and freight (a substantial portion of which moves in interstate commerce) and in the transportation of goods in process of production for interstate commerce.

The telephone work had to do with lowering certain facilities to conform to new street grade, relocating and regrading an underground conduit and construction of a

Roland A. McCrady, of Pittsburgh, Pa. (W. F. McCrady, Jr., and McCrady, Nicklas & Hirschfield, all of Pittsburgh, Pa., on the brief), for appellant.

Morton Liftin, of Washington, D. C. (William S. Tyson, Sol., and Bessie Margolin, Asst. Sol., both of Washington, D. C., Ernest N. Votaw, Regional Atty., of Philadelphia, Pa., and Joseph M. Stone, and Frederick U. Reel, Attys., both of Washington, D. C., all of U. S. Dept. of Labor, on the brief), for appellee.

Before EDGERTON, GOODRICH, and McLAUGHLIN, Circuit Judges.

---

[1] D.C., 60 F.Supp. 243.

[2] Fair Labor Standards Act of 1938, June 25, 1938, c. 676, Section 1 et seq., 52 Stat. 1060, 29 U.S.C.A. 201 et seq. Section 217 provides for injunctions against violations of Section 215, by which noncompliance with Section 206 (wages) and Section 207 (hours) is prohibited.

Section 206 (a) reads:

"Every employer shall pay to each of his employees who *is engaged in commerce or in the production of goods for commerce* * * *"

Section 207 (a) reads:

"No employer shall * * * employ any of his employees who *is engaged in commerce or in the production of goods for commerce—*" (Emphasis supplied)

[3] The numbers of such contracts and their dates are: 792: 4–11–42; 777: 10–14–41; 803: 5–4–43; 809: 5–25–43; (same as None: 12–18–41); 708: 9–7–39; 767: 7–29–41; 767: 7–26–41; 809: 5–25–43; 767: 7–25–41.

new conduit (a small portion of the latter used the old construction). The lines involved were regularly used for interstate telephonic communication.

The railroad projects consisted of removal of an old railroad bridge and partial building of a new one, repairing a roundhouse, putting in foundations for a new signal tower and foundations and subflooring for a new maintenance building and storehouse. The railway for which this work was done is a public service corporation engaged in general railroad transportation. A substantial amount of the freight it carries originates at or is destined for points outside Pennsylvania.

The industrial facilities are foundations for new units of existing plants, with and without drainage and superstructure, foundations for machinery, plant roads, parking lots, sidewalk, trench, drainage ditch, cutting back a hillside, removing cinders, filling in a foundation, extension stream drainage pipe, new sewer, new crib wall, new siding, new underpass and new roadbed for a new siding. The three industrial establishments for which this work was performed ship their products in interstate commerce and were all going concerns during the periods of the contracts.

Appellant's employees on these various contracts consisted of foremen, timekeepers, drivers, bricklayers, operators of cranes and other machines, laborers, watchmen and the like. The special classes of employees are of no importance here as the parties have agreed that the rights for claims of particular workmen would not be adjudicated. They were not compensated in accordance with Section 15(a) (2) of the Fair Labor Standards Act of 1938. The District Court held that those employees in the road jobs were engaged in interstate commerce and in the production of goods for interstate commerce. Those on the telephone and railroad facilities were found employed in interstate commerce. The industrial groups were considered to be engaged in production of goods for interstate commerce.

■ Since the road, telephone and railway contracts are governed by the same general theory with reference to the application of the Fair Labor Standards Act they can be discussed together. Appellant asserts that work on public roads, streets and bridges is not within the legislative intent of the Fair Labor Standards Act. It bases this primarily on lack of specific reference to those items in the legislative history of this very general statute. It also urges that an independent contractor so engaged is the alter ego of the governmental unit by which he is employed and while it does not actually claim that it comes within Section 3(d) of the Act which excludes from the definition of "employer" the "United States or any State or political subdivision of a. State," it does say that the exclusion itself is indicative of the Congressional intention not to interfere with such matters as these, on the theory that they are within the scope of local governments and their functions.[4] It attempts unsuccessfully we think, to distinguish the leading case of Overstreet v. North Shore Corporation, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656. There the point was whether employees of a privately owned toll bridge corporation, operating a draw bridge on a road used in interstate commerce over a stream similarly used, came under the Act. The Supreme Court quoting from Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460 said at page 128 of 318 U.S. 125, 63 S.Ct. 494, 496, 87 L.Ed. 656:

" 'It is clear that the purpose of the Act was to extend federal control in this field throughout the farthest reaches of the

---

4 In Walling v. Patton-Tulley Co., 6 Cir., 134 F.2d 945, 949 the Court said at page 949:

" * * * The argument that it was the Congressional intention to make the Fair Labor Standards Act inapplicable to work under government contract, must be rejected. No reason appears why contractors for the government are to be permitted to maintain sub-standard labor conditions while private contractors are prohibited from so doing, and such view would thwart the clearly defined purpose of the Congress, particularly if applied at a time when all, or nearly all, major industries are operating upon government contract."

channels of interstate commerce'. And in determining what constitutes 'commerce' or 'engaged in commerce' we are guided by practical considerations."

Concluding that such work was covered by the Act the Court said at page 129 of 318 U.S. 125, 63 S.Ct. 494, 497, 87 L.Ed. 656:

"Vehicular roads and bridges are as indispensable to the interstate movement of persons and goods as railroad tracks and bridges are to interstate transportation by rail. If they are used by persons and goods passing between the various States, they are instrumentalities of interstate commerce. Cf. Covington & Cincinnati Bridge Co. v. Kentucky, 154 U.S. 204, 218, 14 S.Ct. 1087, 1092, 38 L.Ed. 962. Those persons who are engaged in maintaining and repairing such facilities should be considered as 'engaged in commerce' even as was the bolt carrying employee in the Pedersen case, supra, [Pedersen v. D. L. & W. R. Co., 299 U.S. 146, 33 S.Ct. 648, 57 L.Ed. 1125] because without their services these instrumentalities would not be open to the passage of goods and persons across state lines. And the same is true of operational employees whose work is just as closely related to the interstate movement."

Appellant contends that this decision is confined to holding that privately owned toll roads are within the Act because in McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 1250, 87 L.Ed. 1538, the opinion states that "Employees engaged in operating and maintaining privately owned toll roads and bridges over navigable waterways are 'engaged in commerce'. Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656, etc." As seen, the McLeod decision simply mentions that the facts in Overstreet involved a privately owned road. It does not purport to limit that decision's above quoted general language to such privately owned toll roads and bridges or to in any way suggest that those instrumentalities under the circumstances could possibly be any more in the stream of commerce than if they were publicly controlled.

In Pedersen v. Fitzgerald Co., 318 U.S. 740, 63 S.Ct. 558, 87 L.Ed. 1119, abutments of railroad bridges had been destroyed by flood and the superstructures of the bridges damaged. Interstate trains operated over the bridges. The new abutments were not used to support either the superstructures or the railroad bed and were not used by the railroad in any way during their construction. The employees building the abutments were none the less considered to be engaged in interstate commerce. In Walling v. Patton-Tulley Co., 6 Cir., 134 F.2d 945, 946 both construction of and repair of dykes and revetments on the Mississippi River the purpose of which was "to direct and channelize the current of the river in order to prevent erosion and to maintain the minimum depth required by commercial navigation" were held to be in commerce. The latest case on the subject is Ritch v. Puget Sound Bridge & Dredging Co., Inc., 9 Cir., 156 F.2d 334. The work there consisted of deepening the harbor waters of the Bremerton Navy Yard and included the construction of retaining walls to prevent silting. Judge Denman in his fine opinion exhaustively reviews the pertinent law. In that issue the facilities worked on were not employed in commerce during their construction, one of the points presented by this appeal. The Court held that since the work was in commerce, the draftsman and timekeepers actually engaged in it were in commerce, saying, "They have the immediacy of participancy lacking in the cook of McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538." Walling v. Craig, D.C.Minn., 53 F.Supp. 479 decided that employees on road repairs much like the present work were within the Act.

The above citations relate just as forcibly to telephone and railroad facilities where they are closely connected with commerce, as they do to highways. That the highways, roads, streets, telephone and railroad facilities under consideration are engaged in interstate commerce as found by the Trial Court is amply borne out by the record. In addition, the evidence warrants the holding that the highways, roads and streets, all of them in the Pittsburgh area, are indispensable to the continuance of production of goods moving in interstate

commerce and therefore that the appellant's employees · on those facilities are also engaged in the production of goods for commerce. There is no need of stating the use and extent of such use in commerce, of each separate project. Some of the highways (for example United States Highways 22 and 30) on which there was work have heavier interstate use than several of the smaller roads but all of them partake of an interstate nature. Appellant does not dispute that the telephone lines were regularly used for interstate calls but says that on two of the telephone contracts its people did not work on the cables themselves; as to the third it urges that the conduit constructed for the telephone wires was. new and that after completion only 1% of the traffic over the wires was interstate. On the railroad matters appellant frankly refers to the interstate business of the railroad but contends: that the viaduct construction had nothing to do with transportation; that the roundhouse it repaired housed locomotives operating intra state (though admittedly these do haul interstate shipments) and finally that the new signal tower the foundations of which it laid,. had not up to the trial been put into commerce. We see no force in these ingenious distinctions. The railroad was engaged in general transportation mainly in connection with the steel mills and other industries in the vicinity and a substantial part of its freight is interstate. Under the Overstreet and Pedersen opinions, supra, the work of the appellant was so vital to the functioning of all of the above instrumentalities of commerce as to be for practical purposes part of interstate commerce itself.

■ Appellant, however, having eliminated · from discussion its repair contracts argues that its new construction projects are without the intent of the Act since they do not constitute commerce or an instrumentality of commerce until actually so used. With one or two exceptions, the new abutments to the bridges in the Pedersen case (supra) construed as being under

the Act were of the type of so-called "new construction" the appellant performed in carrying out its contracts. The conduit and the signal tower while not reconstruction jobs were so closely allied, the first to the existing telephone system and the second to the railroad as to come well within the Pedersen rule.

■ We do not think that whatever limitations may be imposed upon the phrase "in commerce" under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., are binding on the Fair Labor Standards Act coverage. The two statutes are "not strictly analogous." Overstreet v. North Shore (supra). The subject matter, type of regulations and the declared purposes of the Fair Labor Standards Act are all opposed to such restriction. It is true that under the second Federal Employers' Liability Act, 35 Stat. 65, the term "in commerce" was confined to employees engaged in transportation. N. Y. Railroad v. Bezue, 284 U.S. 415, 52 S.Ct. 205, 76 L.Ed. 370, 77 A.L.R. 1370. However, since that decision the Supreme Court in Virginia Railway v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 603, 81 L.Ed. 789 has held that the activities of the same sort of shop employees (repairing locomotives and cars) who in the Bezue case were excluded from the scope of the Liability Act "have such a relation to the other confessedly interstate activities * * * that they are to be regarded as a part of them." Granting the differences in coverage between the labor statute in the Virginia Railway litigation and the present law nevertheless that case bulwarks the view that the Fair Labor Standards Act construction of "in commerce" is not limited to the interpretation of that phrase under the Federal Employers' Liability Act.[5] Raymond v. Chicago, etc. R. Co., 243 U.S. 43, 37 S.Ct. 268, 61 L.Ed. 583 strongly relied on by the appellant for this proposition, which came to the Supreme Court from the Ninth Circuit is itself distinguished by that Circuit in. Ritch v. Puget Sound Bridge & Dredging Co., Inc.,

---

[5] The Employers' Liability Act was itself amended in 1939, 45 U.S.C.A. § 51, and now specifically applies to any employee "* * * any part of whose duties * * * shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely or substantially, affect such commerce * * *."

(supra), the Court saying that, " * * * the tunnel under construction was entirely disconnected from the existing railway line."

■ The second general group of contracts comprises the work connected with the three large industrial establishments.[6] The District Court found, and it is not challenged, that all three of these ship their products in interstate commerce. With reference to the "new work" to which this dispute has now been reduced, the Trial Judge said: "These new units were all integral parts of existing plants and were constructed to enlarge or replace outmoded buildings and machinery, and thus to continue the operation of the plant as a whole."

■ Appellant insists that its employees on these industrial projects were not, in the language of Section 3(j) of the Act, "necessary to the production" of goods for interstate commerce. It relies on 10 East 40th Street Bldg., Inc., v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806. We do not see the relevancy of that opinion. Indeed if the building there had been used as all of the plants under consideration are used, namely, for the manufacturing of goods for interstate commerce, the result in the Callus decision of necessity would have been otherwise. It is well settled that to come within Section 3(j) actual physical contact with the goods produced is not required. Fleming v. Kirschbaum, 3 Cir., 124 F.2d 567, 571, affirmed 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638. The Supreme Court in Warren-Bradshaw Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83 included within Section 3(j) employees who performed the preparatory drilling for an oil well, and who ceased work before oil was struck. In the recent Roland Electric Co. v. Walling opinion, 66 S.Ct. 413, 416, referring to Section 3, Mr. Justice Burton said:

"This does *not* require the employee to be directly 'engaged in commerce' among the several states. This does *not* require the employee to be employed even in the production of an article which *itself* becomes the subject of commerce or transportation among the several states. It is enough that the employee be employed, for example, in an occupation which is necessary to the production of a part of any other 'articles or subjects of commerce of any character' which are produced for trade, commerce or transportation among the several states. This does *not* require an employee to be employed exclusively in the specified occupation. This does *not* require that the occupation in which he is employed be *indispensable* to the production under consideration. It is enough that his occupation be '*necessary to the production.*' There may be alternative occupations that could be substituted for it but it is enough that the one at issue is needed in such production and would, if omitted, handicap the production."

■ There is no real differentiation between the "new" industrial items. Even the above simple listing of them gives some idea of their prime importance to the proper functioning of the facilities in question. Our independent examination of the record shows the District Judge sound in his conclusion that they are all integral parts of existing plants and that their purpose was to continue the operation of the plants, all of which are producing goods for interstate commerce.

Affirmed.

---

[6] In this second group we have listed the three contracts having to do with railroad work but performed for two of the three manufacturing corporations. (New siding, new underpass and new roadway for a new siding). These perhaps might be included with the railway contracts which is the way the appellant groups them but seem more properly to belong to the industrial facilities classification.