TOBIN, Secretary of Labor v.
JOHNSON et al.

No. 14513.

United States Court of Appeals
Eighth Circuit.

July 17, 1952.

6. Pacific Employers Ins. Co. v. Barnett, Tex.Civ.App., 230 S.W.2d 331.

7. Dallas Ry. & Terminal Co. v. Sullivan, 108 F.2d 581, at page 583.

William A. Lowe, Washington, D. C., Atty. United States Department of Labor (William S. Tyson, Sol., Bessie Margolin, Asst. Sol., and Joseph D. Mladinov, Atty., United States Department of Labor, Washington, D. C., and Francis M. Cook, Regional Atty., Kansas City, Mo., on the brief), for appellant.

Charles F. Lamkin, Jr., Kansas City, Mo. (Oscar S. Brewer, Mildred D. Raymond, and Warrick, Brewer, Lamkin & Myers, Kansas City, Mo., on the brief), for appellees.

Before SANBORN, WOODROUGH and RIDDICK, Circuit Judges.

## WOODROUGH, Circuit Judge.

This action was brought by plaintiff under Section 17 of the Fair Labor Standards Act of 1938, c. 676, 52 Stat. 1060, as amended, 29 U.S.C.A. § 201 et seq., to enjoin defendants from violating the overtime and record-keeping requirements of the Act, Section 7 and 11(c) of the Act, 29 U.S.C.A. § 207 and § 211(c).

Plaintiff's [1] original complaint in this action was dismissed on motion of defendants for failure to state a claim upon which relief could be granted. On appeal to this court the judgment of dismissal was reversed and the case "remanded for trial on the merits." McComb, Administrator, v. Johnson, 8 Cir., 174 F.2d 833, 834.

On remand, an amended complaint, containing changes not requiring discussion here, was filed. Defendants' answer was, in effect, a general denial. Subsequently plaintiff filed a Request for Admission of Facts. At the pre-trial conference, defendants generally admitted the truth of the statement of facts in the Request for Admissions.

On the trial, the trial court found that the "essential facts are not in dispute". Those facts appeared from the Request for Admission of Facts which defendants admitted, the pre-trial memorandum of the court, and a stipulation filed as Exhibit B. At the

conclusion of the trial, and on consideration of the documentary evidence submitted to it, the trial court, sitting without a jury, found for the defendants, stating, "It is my view, and I therefore conclude that no portion of said materials were moving in commerce, and that the defendants were not producing goods for commerce, and for that reason, the employees of the defendants are not covered by the Act, and the plaintiff's complaint is dismissed". Plaintiff appeals from the judgment of dismissal.

Briefly stated, the facts as shown by the stipulations and admissions were these: Defendants operate rock quarries and crushers in Missouri at the towns of Gilliam, King City, and Regal. Their employees at those towns, and at their office in Carrollton, Missouri, are engaged in quarrying and crushing rock, and in producing rock and oil mat aggregate for use in maintaining and repairing vehicular highways and other concrete structures such as dikes and revetments in rivers, and in keeping records pertaining to such work. None of the rock so quarried and processed is shipped outside of the State of Missouri. A large proportion of the rock, however, was produced for use on existing roads in Missouri, and for use in maintaining and building dikes and revetments on the Missouri River. Admittedly, the roads on which the rock was used did carry interstate traffic, and the dikes and revetments on the river were there for the purpose of maintaining its navigable channel. It was shown that barges use the river in transporting interstate shipments. Defendants' employees did not apply the processed rock to the highways or dikes, but instead defendants sold the material to others who did the actual applying.

Admittedly, defendants violated the Act as charged, in that their record-keeping was not in accord with the Act and their employees worked hours in excess of forty hours per week without receiving the statutory overtime compensation if their employees are within the coverage of the Act. The pertinent provision of the Act is:

---

[1]. The original action was brought by the Administrator of Wage and Hour Division, United States Department of Labor. The Secretary of Labor was sub- stituted as plaintiff following his succession to the Administrator's right to bring legal proceedings under the Act.

Section 7(a): "Except as otherwise provided in this section, no employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Defendants state the question for decision here and their position with respect to it as follows: "The production of crushed rock within a State, sold entirely within that State, and used by the purchaser entirely within that State for the maintenance and improvement of roads and a river over which interstate commerce moves, is not the production of goods for commerce within the meaning of the Fair Labor Standards Act of 1938, as amended".

■ Plaintiff does not contend, as he could not do so in view of the decided cases, that defendants' employees are "engaged in commerce", but only that they are "engaged in the production of goods for commerce". The provision of the Act sought to be applied here by the plaintiff is more flexible and encompasses more activities than could be included by the phrase "engaged in commerce". As stated in Armour & Company v. Wantock, 323 U.S. 126, 131, 65 S.Ct. 165, 168, 89 L.Ed. 118, " * * * the test of whether one is in commerce is obviously more exacting that the test of whether his occupation is necessary to production for commerce."

■ It has been established that the repair of interstate facilities constitutes commerce within the meaning of the term as used in the Fair Labor Standards Act, and employees working on and maintaining roads and bridges carrying interstate traffic, dikes on the Mississippi River, telephone conduits containing circuits carrying interstate calls, and railroad signal towers, have been held to be engaged "in commerce". Overstreet v. North Shore Corporation, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Pedersen v. J. F. Fitzgerald Construction Company, 318 U.S. 740, 63 S.Ct. 558, 87 L.Ed. 1119; Walling v. Patton-Tulley Transp. Co., 6 Cir., 134 F.2d 945; Walling v. McCrady Const. Co., 3 Cir., 156 F.2d 932.

In Overstreet v. North Shore Corporation, supra, the Supreme Court stated at page 129 of 318 U.S., at page 497 of 63 S.Ct., 87 L.Ed. 656, "Vehicular roads and bridges are as indispensable to the interstate movement of persons and goods as railroad tracks and bridges are to interstate transportation by rail. If they are used by persons and goods passing between the various States, they are instrumentalities of interstate commerce. * * * Those persons who are engaged in maintaining and repairing such facilities should be considered as 'engaged in commerce' even as was the bolt carrying employee in the Pedersen case [Pedersen v. Delaware, L. & W. R. Co., 229 U.S. 146, 33 S.Ct. 648, 57 L.Ed. 1125] because without their services these instrumentalities would not be open to the passage of goods and persons across state lines."

In the case at bar, plaintiff Secretary of Labor advances to the next logical step and contends that since the persons working on interstate roads are working on instrumentalities of interstate commerce and are engaged "in commerce", then the persons producing the goods used in working on the said instrumentalities are themselves producing "goods necessary for commerce".

We have been referred to only one case decided by a federal appellate court passing on the precise question. In the case of Tobin, Secretary, v. Alstate Construction Company, 195 F.2d 577, 579, the Court of Appeals for the Third Circuit held under practically identical circumstances that "Alstate's off-the-road employees, in producing material which is used to repair and maintain the surfaces of instrumentalities of commerce, are engaged 'in the production of goods for commerce' ". With that declaration we are in accord.

■ In defendants' arguments in this court, and the reasoning of the trial court, great stress is laid on the fact that in the case at bar, the goods produced did not *move* in interstate commerce and that therefore employees engaged in producing those goods are not producing goods for com-

merce. Movement, or the lack of it, of the article produced across state lines is not the determining factor. In Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383, in discussing Section 6(a) of the Act, the Supreme Court stated, 326 U.S. at page 663, 66 S.Ct. at page 416, 90 L.Ed. 383, "This [referring to the application of Section 6(a) of the Act] does *not* require the employee to be directly 'engaged in commerce' among the several states. This does *not* require the employee to be employed even in the production of an article which *itself* becomes the subject of commerce or transportation among the several states. It is enough that the employee be employed, for example, in an occupation which is necessary to the production of a part of any other 'articles or subjects of commerce of any character' which are produced for trade, commerce or transportation among the several states." (Emphasis that of the Supreme Court).

 We feel that the production of material designed to be placed upon interstate highways and upon structures in rivers carrying interstate commerce must be held to be production of "articles of [transportation]." We recognize that Congress in enacting the Fair Labor Standards Act did not extend the coverage of the Act as far as they might have in that they expressly refused to approve a statute regulating industries "affecting commerce". See H. Rep. No. 2738, 75th Congress 3rd Sess., pp. 29–30; 83 Cong.Rec. 9158, 9266–67. It appears, however, that the production in this case does more than merely "affect commerce". When it is held, as it was in the case of Overstreet v. North Shore Corp., supra, that roads "used by persons and goods passing between the various States" are "instrumentalities of interstate commerce", and that the persons employed in maintaining such roads are engaged "in commerce", then it seems clear that goods, produced for instrumentalities of commerce and applied by persons engaged in commerce, have been produced "for commerce".

This seems all the more reasonable when considered in the light of the Supreme Court's declaration in the case of Armour & Co. v. Wantock, supra, that the phrase "production for commerce" is "obviously" more flexible and more inclusive than the phrase "engaged 'in commerce,'" and in the light of the purpose of the Act itself. As stated in Phillips Co. v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed 1095, "The Fair Labor Standards Act was designed 'to extend the frontiers of social progress' by 'insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" In that same case, in discussing an exemption in the Act, the Supreme Court continues, "Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress."

It appears to us that the production in this case must be held to be within the coverage of the Act, and therefore the judgment of the trial court must be reversed.

Reversed and remanded with direction to enter injunctional order as required by this opinion.