James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

SOUTHWEST ENGINEERING COMPANY, Inc., a corporation, Paul H. Anderson and Robert E. Cloepfil, Defendants.

No. 1586.

United States District Court
W. D. Missouri, S. D.
Feb. 10, 1959.

Stuart Rothman, Solicitor, Washington, D. C., Harper Barnes, Regional Atty., John Weiss, Gerald Z. Rossow, Atty., Dept. of Labor, Kansas City, Mo., for plaintiff.

Wear & Wear, Springfield, Mo., for defendant.

R. JASPER SMITH, District Judge.

This is an action by the Secretary of Labor to enjoin defendants from violating the provisions of Sections 15(a)(2) and (5) of the Fair Labor Standards Act

of 1938, as amended, Title 29 U.S.C.A. §§ 201–219, alleging failure to pay time and one-half to employees for work performed in excess of forty hours per week as required by Section 7 of the Act, and failure to keep and maintain adequate records as required by Section 11(c) and implementing administrative regulations, 29 C.F.R., Section 516. Plaintiff seeks injunctive relief against the corporation as an entity and against Paul H. Anderson, its President and principal stockholder, and Robert E. Cloepfil, its Vice President and Superintendent of Construction.

■ Southwest Engineering Company is a Missouri corporation engaged in the construction business, and having its principal office in Springfield, Missouri. Through the years 1957 and 1958, it had contracted with the Civil Aeronautics Administration for some fifteen to eighteen projects. These projects were scattered throughout Missouri, Kansas, Iowa and other states, and consisted of contracts for the modification and improvement of facilities at existing airports and certain other facilities for airplane guidance and communication which will be described in some detail since the construction of these facilities constitutes the principal controversy between the parties here.

Over the past thirty years the Civil Aeronautics Administration has been constructing, and is in the process of continually improving, a system of national airways. Guidance of air traffic is accomplished by means of various visual, electrical and electronic devices. A pattern of national air routes has been established along which commercial and other aircraft may fly and obtain the benefits of intelligence furnished by the Civil Aeronautics Administration as to flight conditions, weather conditions and electronic guidance. As scientific knowledge has grown, the facilities of the Civil Aeronautics Administration have been improved. In 1928, light beacons were placed every ten or twelve miles along the airways as visual aid in night flying. Progression of advance in the way of

direction-finding apparatus has carried through several types of low frequency radio transmissions, the installation of high frequency radio equipment, and improvements on the high frequency systems.

Defendant company contracted to construct the buildings in which the CAA would later house some of the newer types of high frequency radio equipment. There were three general kinds of stations involved. They are designated as Variable Course Omni Range Stations (VOR Stations), Variable Course Omni Range Tactical Air Navigation Stations (VORTAC Stations) and Peripheral Stations. The company prepared the sites, and constructed the buildings, towers, driveways and the conduits for electrical wiring. Once the facility had been prepared to this point, defendant company's work was complete, and the CAA installed the electronic equipment with its own personnel.

There is no question as to the applicability of the Fair Labor Standards Act to employees working on the improvement, modification or alteration of existing instrumentalities of interstate commerce. They are engaged in commerce within the purview of the Act. J. F. Fitzgerald Const. Co. v. Pedersen, 1945, 324 U.S. 720, 65 S.Ct. 892, 89 L.Ed. 1316; Overstreet v. North Shore Corporation, 1943, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Tobin v. Johnson, 8 Cir., 1952, 198 F.2d 130. Where defendants engaged in this type of work, they have complied with the provisions of the Act.

The controversy centers on the construction of the new buildings, isolated from the existing facilities, for the VOR, VORTAC and Peripheral stations. Defendants contend that the construction of these stations come within the "new construction" doctrine, and work performed thereon was not within the scope of the Fair Labor Standards Act. Plaintiff takes the position that the "new construction rule" is inapplicable, and that employees working in the construction of housing for the VOR, VORTAC and Peripheral stations were engaged in

commerce within the meaning of the Act. It is admitted that the overtime and record keeping provisions of the Fair Labor Standards Act have not been met so far as the housing construction is concerned. In all other respects defendants are in compliance with the Act.

Plaintiff has gone to considerable pains to demonstrate that the VOR, VORTAC and Peripheral stations are an improvement of an existing facility of interstate commerce. Under the evidence adduced, there can be no reasonable question of this premise. The facilities involved were an improvement and refinement of existing methods in the guidance and control of air traffic. A great deal of time, effort and money is being spent to keep pace with the rapid technological advances in aircraft design and with the increasing volume of air traffic as a means of transportation. It is true that these buildings were constructed in isolated areas, and until they were equipped by the CAA for the purposes for which they were built they had no direct connection with an existing facility. However, they were designed and built to serve as a component part of an existing whole, and in point of fact they merely supplemented and improved prior control and guidance systems.

With these facts established, there can be no question as to the applicability of the Fair Labor Standards Act to this type of work.

Section 7(a) of the Act requires that "no employer shall employ any of his employees who is *engaged in commerce* or *in the production of goods for commerce* for a workweek longer than forty hours, * * *" (Emphasis added.) Plaintiff does not contend that the employees here were engaged in the production of goods for commerce within the meaning of this section. The contention simply is that the employees were engaged in commerce.

It is not necessary to embark on an extended journey through case precedent to trace the history of the so-called "new construction rule". Its growth and development is indicated in Southern Pacif-

ic Co. v. Gileo, 1956, 351 U.S. 493, 76 S.Ct. 952, 100 L.Ed 1357. It is sufficient to say that the rule came about in an effort to relegate the difficult problems presented when a clear line of delineation was sought concerning the scope of coverage of such federal legislation as the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq. and the Fair Labor Standards Act. Three recent Supreme Court cases have set the problem to rest. The principal case is Mitchell v. C. W. Vollmer & Co., Inc., 1955, 349 U.S. 427, 75 S.Ct. 860, 862, 99 L.Ed. 1196. That case involved employees who were working on the construction of the Algiers Lock, a new appendage to the already existing Gulf Intracoastal Waterway. Previous facilities had become inadequate in handling traffic, and the new canal would provide an alternate route to relieve congestion. The lock was new construction in the sense that it did not follow any pre-existing waterway, and was physically separated from existing facilities. The Court held the employees were engaged in commerce. It was pointed out that construction of the new route was as much an improvement of an existing facility as dredging and widening of the old canal would have been. One paragraph of that case has been widely quoted:

"* * * * The question whether an employee is engaged 'in commerce' within the meaning of the present Act is determined by practical considerations, not by technical conceptions. See Walling v. Jacksonville Paper Co., 317 U.S. 564, 570, 63 S.Ct. 332, 336, 87 L.Ed. 460; Overstreet v. North Shore Corp., 318 U.S. 125, 128, 130, 63 S.Ct. 494, 497, 87 L.Ed. 656. The test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity. See McLeod v. Threlkeld, 319 U.S. 491, 497, 63 S. Ct. 1248, 1251, 87 L.Ed. 1538. Repair of facilities of interstate com-

**314**

merce is activity 'in commerce' within the meaning of the Act as we held in Fitzgerald Const. Co. v. Pedersen, 324 U.S. 720, 65 S.Ct. 892, 89 L.Ed. 1316. And we think the work of improving existing facilities of interstate commerce, involved in the present case, falls in the same category."

Twice since that opinion the Court has commented on the significance of its own holding in Vollmer. In Southern Pacific Co. v. Gileo, supra, it said [351 U.S. 493, 76 S.Ct. 957]:

"* * * This Court recently rejected the 'new construction' doctrine in determining whether an employee is 'engaged in commerce' within the meaning of a like provision in the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 75 S.Ct. 860, 861, 99 L.Ed. 1196. * * *"

And in Mitchell v. Lublin, McGaughy & Associates, 79 S.Ct. 260, 265, the Court said:

"* * * Whatever vitality the 'new construction' doctrine retains after Mitchell v. C. W. Vollmer & Co., supra, and Southern Pacific Co. v. Gileo, 351 U.S. 493, 500, 76 S.Ct. 952, 957, 100 L.Ed. 1357 it is not applicable here * * *."

The "new construction" doctrine has been the subject of such extensive legal analysis and comment by various Courts of Appeals as to require no further comment from me. See H. B. Zachry Company v. Mitchell, 5 Cir., 262 F.2d 546; Mitchell v. Empire Gas Engineering Company, 5 Cir., 1958, 256 F.2d 781; Archer v. Brown & Root, Inc., 5 Cir., 1957, 241 F.2d 663; Chambers Construction Company v. Mitchell, 8 Cir., 1956, 233 F.2d 717; Mitchell v. Brown, 8 Cir., 1955, 224 F.2d 359.

■ The test enunciated by Vollmer is complete in itself. That test is "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce, as to be in practical effect, a part of it, rather than isolated, local activity."

For other cases see Mitchell v. Chambers Construction Co., 10 Cir., 1954, 214 F.2d 515; Mitchell v. Hodges Contracting Co., 5 Cir., 1956, 238 F.2d 380; Mitchell v. Brown, supra; Tobin v. Ramey, 5 Cir., 1953, 205 F.2d 606; Tobin v. Pennington-Winter Const. Co., 10 Cir., 1952, 198 F.2d 334; Walling v. McCrady Const. Co., 3 Cir., 1946, 156 F.2d 932, certiorari denied 1946, 329 U.S. 785, 67 S.Ct. 298, 91 L.Ed. 673.

From all these, the conclusion is inescapable that defendant corporation's employees were engaged in commerce within the meaning of the Fair Labor Standards Act.

■ Some additional facts are necessary to determine the extent of relief required, if any. As previously indicated, plaintiff seeks to restrain both the corporation and its two principal officers. Plaintiff concedes that defendants have met the prescribed standards of the Act in their repair or modification work. The record indicates that defendants acted upon advice of counsel in denying that they were within the scope of coverage while constructing new buildings at locations isolated from existing facilities.

The record indicates that on August 12, 1957, the Regional Office of the Civil Aeronautics Administration at Fort Worth, Texas, had sent a letter to Resident Engineers in its Region specifying the labor standards and non-discrimination procedures applicable to contracts for construction. In part this notice read:

"* * * Also, particular attention should be given to the terms of the Eight-Hour Law incorporated in the contract, which requires contractors to pay overtime for any hours worked in excess of eight hours in any one day. Contractors are not, however, limited to a five day week. For example, a contractor could work his employees seven eight-hour days per week without overtime pay. * * *"

While it is not contended that the Civil Aeronautics Administration has the authority to waive the provisions of the Fair Labor Standards Act when applicable, this communication certainly deserves consideration in determining the bad faith of defendants in a proceeding of this kind.

So far as the record indicates, only one investigation was conducted for plaintiff and that was during the months of December, 1957, and January, 1958, a short time before the commencement of this action. At the time this action was commenced, almost all of the work contracted to be done had been completed.

By way of summary, the record justified these conclusions:

Defendants acted in good faith on the advice of counsel where there was some room for reasonable doubt that the construction of the stations were within the scope of the Act. The case resolved about a sensitive legal question on which there existed to some degree a conflict of authority. Defendants had been informed by the governmental agency with which they were dealing directly that certain practices were permitted which were in conflict with the Fair Labor Standards Act. Almost all the work over which there was controversy as to coverage had been completed at the time of the institution of this suit. Since the investigation defendants have complied with the record-keeping provisions of the Act. Defendants have always complied with the overtime provisions on projects where coverage was clear. More important, defendants have indicated a good faith willingness to comply fully with the Act should the decision on the merits here be adverse to them.

In determining whether an injunction should issue under the facts, a trial court has a broad discretion. Mitchell v. Empire Gas Engineering Company, supra; Mitchell v. Hodges Contracting Co., supra; Mitchell v. Chambers Construction Co., supra.

Within reasonable limits, employers should be allowed to contest the coverage of the Act as to them without the pain of forever thereafter operating under the burden of a possible contempt citation. An injunction against defendants is not warranted or justified in this case. For these reasons, plaintiff's prayer for injunctive relief is denied. Judgment will be entered accordingly.