271 F.2d 427
 James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,
v.
SOUTHWEST ENGINEERING COMPANY, Inc., a corporation, Paul H. Anderson and Robert E. Cloepfil, Appellees.
 No. 16240.
 United States Court of Appeals Eighth Circuit.
 November 10, 1959.
 
 Jacob I. Karro, Atty., U. S. Dept. of Labor, Washington, D. C. (Harold C. Nystrom, Acting Solicitor of Labor, Bessie Margolin, Asst. Solicitor, and B. Harper Barnes, Regional Atty., Washington, D. C., were with him on the brief), for appellant.
 William A. Wear, Springfield, Mo. (Wear & Wear, and Sam M. Wear, Springfield, Mo., were with him on the brief), for appellees.
 Before WOODROUGH and MATTHES, Circuit Judges, and MICKELSON, District Judge.
 WOODROUGH, Circuit Judge.
 
 
 1
 This action was brought on June 25, 1958, by the Secretary of Labor under Section 17 of the Fair Labor Standards Act of 1938 as amended[1] to enjoin appellees, Southwest Engineering Company, Inc., Paul Anderson and Robert Cloepfil, from violating the Act's overtime and record-keeping provisions. On the trial of the case defendants conceded that they had not complied with the provisions in fulfilling certain construction contracts for the government described in the complaint but contended that the Act was not applicable to those contracts. The court held that the Act applied and found defendants to be in violation but denied the injunction. Mitchell v. Southwest Engineering Co., D.C., 170 F.Supp. 310. The Secretary appeals from the denial.
 
 
 2
 It appears that appellee Southwest Engineering Company is a corporation engaged in the construction business. Appellee Anderson was its president and principal stockholder at the time of the events in question, and still is. He was and is in control of the company's personnel practices and policies. Appellee Cloepfil was and is its vice president and superintendent of construction, and actively supervised the employees on the projects here in question.
 
 
 3
 In 1957 and 1958, appellee Southwest was engaged in seventeen construction projects for the Federal Government, under contracts with the Civil Aeronautics Administration, at a total contract price of almost $440,000. The contracts called for the construction of facilities for the guidance and control of airplane traffic over established airways. The facilities included approach light landing system, radar towers, Variable Course Omni Range Stations (commonly called VOR stations), Variable Course Omni Range Tactical Air Navigation Stations (commonly called VORTAC stations), and Peripheral Stations. Appellees contended below that the Act was not applicable to employment on these projects. The trial court determined, however, that "there can be no reasonable question" that the new structures constituted "an improvement of an existing facility of interstate commerce", to wit, the existing system for the guidance and control of air traffic. It found that "the conclusion is inescapable", upon the decided cases, that the employees were covered by the Act. 170 F.Supp. 313-314.
 
 
 4
 Appellees have not appealed from these conclusions.
 
 
 5
 Concerning the charged violations, the facts are in the main stipulated. Appellees concede that they did not pay overtime rates for overtime work described in the complaint and found to be covered by the Act, and that they kept false records which concealed all instances of overtime work. They admit that "many" of the employees in "many, if not most, of the workweeks" worked more than the statutory base period of forty hours (and "many" of them more than 48 hours and as much as 56 hours) without being paid at overtime rates. The amount of overtime pay thus withheld, it is agreed, is "substantial and may well amount to several thousand dollars."
 
 
 6
 As to the falsification of records, it is stipulated that appellees received "accurate and true" time-and-work reports from the employees and their foremen, but that their own "method of recording time" from these reports was to show only the first 40 hours worked by each employee in the week and to mislabel the wage payments for the additional work as "expense allowance". When the Wage-and-Hour investigator, toward the end of December, 1957, asked to see the basic time records, which would have revealed the falsification, they were not furnished to him. On January 27, 1958, when he repeated his request he was told by appellee Anderson that they were not available, but that it was Anderson's practice, as he made up the respective payrolls for the Civil Aeronautics Administration, to discard the underlying time records.
 
 
 7
 On January 31, 1958, Anderson told the Regional Director of the Wage-Hour Administration that the cards had been destroyed all at one time by Anderson's father-in-law who was "in charge of cleaning up the premises".
 
 
 8
 In August 1957, appellee Anderson saw a letter sent by the local office of the Civil Aeronautics Administration to its field engineer, which he borrowed for photostating. The letter directed that "particular attention should be given to the terms of the Eight-Hour Law [40 U.S.C.A. § 321 et seq.]", which was applicable to the C.A.A. contracts independently of the Fair Labor Standards Act. The letter noted that "the Eight-Hour Law * * * requires contractors to pay overtime for any hours in excess of eight hours in any one day". (The Fair Labor Standards Act, on the other hand, is not concerned with the number of hours worked in the day, but requires overtime for any hours in excess of forty in the week; see Section 7(a). Still referring to the Eight-Hour Law the C.A.A. letter continued: "Contractors are not, however, limited to a five-day work week. For example, a contractor could work his employees seven eight-hour days per week without overtime pay." The letter made no reference to the Fair Labor Standards Act. The law was clear at the time, and had been since 1950, that the overtime provisions of the Fair Labor Standards Act and those of the public-contracts statutes were not mutually exclusive. Powell v. United States Cartridge Co., 339 U.S. 497, 515-520, 70 S.Ct. 755, 94 L.Ed. 1017.
 
 
 9
 When this letter was first seen by Anderson, the major portion of the work here in question had already been completed.
 
 
 10
 Anderson testified that he had made and retained a photostat of the letter because "there had been rumors and questions" about the application of the Fair Labor Standards Act. "One employee of the Government would talk about 40 hours a week and we [the appellees] would hear just bits of conversation here and there." Appellees had heard that "in one region the contracts were held to 40 hours a week," but "it wasn't clear in everybody's mind". The defendants had not, however, sought clarification from their attorneys, taking legal counsel only after administrative proceedings to correct their violations were begun in December, 1958. There had accordingly been no reliance, Anderson testified, on advice of counsel in adopting their practices held by the court to be violations of the Act.
 
 
 11
 In arriving at the denial of injunction the court concluded that defendants had "acted in good faith on the advice of counsel where there was some room for reasonable doubt that the construction of the stations were within the scope of the Act" and that "more important" they had "indicated a good faith willingness to comply fully with the Act should the decision on the merits here be adverse to them." (170 F.Supp. at page 315).
 
 
 12
 The Government takes the position on the appeal that the court's basic premise of good faith on the part of the contractor defendants is untenable upon the admitted facts and so divergent from applicable equitable principles that denial of the injunction was not within the limits of sound judicial discretion. It freely concedes that the granting of an injunction lies within the discretion of the trial court but it urges that this discretion "must be a legal discretion, not merely the individual view or will of the particular chancellor," (Winchester Repeating Arms Co. v. Olmstead, 7 Cir., 203 F. 493, 494) and where conceded or indisputable facts would warrant the equitable relief prayed for, such relief may be denied "only on general equitable principles which would constitute established equitable defenses" (United States v. Austin, D.C., 100 F.Supp. 33, 41).
 
 
 13
 Here the admitted facts are that a large amount of overtime work (work over forty hours per week) was being performed by the defendants' employees, that overtime rates were not being paid for that (as required by the Act), that appellees falsified their books in such a manner as to conceal the performance of the overtime work and then about the time the administrative investigation was begun they willfully and knowingly destroyed all at once the basic records which would have exposed the falsification.
 
 
 14
 The falsification in the way it was done (mislabeling overtime work as expense allowances) reflects deliberation and cunning and was effectively adapted to conceal defendants' violations of the law and to enable them to hold out the money due their workmen. The contradictory statements Anderson made about the destruction of the basic reports reflects persistence in the same wrongful purpose. First he told the investigator that he destroyed the records as the payrolls were completed and then that they were all destroyed at once to make a clean up.
 
 
 15
 The appellees have not sought either on the trial or on this appeal to explain or extenuate the conduct to which they have stipulated in falsely keeping and in destroying the records required of them under the Act. They make it necessary for this Court to draw the obvious and necessary conclusion that they are not entitled to any finding of good faith towards the employees but on the contrary have wrongfully and in violation of the Act withheld the overtime pay that was due them and have tried to conceal their violation by willful misconduct, falsehood, and deceit.
 
 
 16
 It is argued in their favor that they sought and obtained the advice of counsel but defendant Anderson's testimony was that appellees had no consultation with counsel about the applicability of the Act until January, 1958, after most of the violations had occurred and they had engaged in the disobedience of the Act that required the administrative suit to be brought.
 
 
 17
 Much of appellees' brief is devoted to showing that there was a close question of law and a basis for reasonable doubt whether the Act covered the work under the contracts herein. But there would be no point in reviewing the cases on the law of the subject here. The trial court decided the contracts were covered by the Act and there is no appeal from that decision. The proof is clear that the appellees adopted and carried on their practices throughout the year 1957 without the advice of counsel. Their first inquiry to him was in January of 1958. They do not show that they had an honest belief on some rational basis that the Fair Labor Standards Act and the public-contracts statutes were mutually exclusive. Nor do they claim ignorance of the provisions of the Fair Labor Standards Act which they followed and applied in certain of their work that is not here involved. That a study of the law (which appellees never made) might have revealed uncertainties in it is not material here.
 
 
 18
 Appellees also stress the fact (found by the court) that almost all the work involved had been completed at the time of institution of this suit so that no injunction would be called for. But as pointed out for the Government, this situation is almost inevitable in view of the nature of the construction business. Projects in which violations are found are most likely to be largely if not entirely completed before an enforcement action can be litigated to the point of a decree and such completion should not be deemed a ground for denying injunction, certainly not where as in this case the defendants continue in the same construction business. See Walling v. Helmerich and Payne, 323 U.S. 37, 43, 65 S.Ct. 11, 89 L.Ed. 29; McComb v. Wyandotte Furniture Co., 8 Cir., 169 F.2d 766, 770; Chambers Construction Co. v. Mitchell, 8 Cir., 233 F.2d 717, 725; Walling v. Haile Gold Mines, 4 Cir., 136 F.2d 102, 105; Tobin v. Ramey, 5 Cir., 205 F.2d 606, rehearing denied, 5 Cir., 206 F.2d 505, certiorari denied Hughes Const. Co. v. Secretary of Labor, 346 U.S. 925, 74 S.Ct. 310, 98 L.Ed. 418. See also Local 74, United Brotherhood of Carpenters' Union v. Labor Board, 341 U.S. 707, 71 S.Ct. 966, 95 L.Ed. 1309.
 
 
 19
 The trial court regarded as "more important" ground for denying injunction that "defendants have indicated a good faith willingness to comply fully with the Act should the decision on the merits here be adverse to them."
 
 
 20
 But the record we are called on to review does not justify this implication of good faith on the part of the appellees. Their resort to falsification and destruction of records and untruthful statements to investigators, failure to take steps to find out or form an opinion about the law, and persistence in the course of action undertaken without consideration of law or advice of counsel refute a conclusion of good faith on their part. We can only infer "undependable contrition under pressure of legal action"[2] in any indication found in the record as to what may be expected from appellees under their future operations.
 
 
 21
 The injunction which the Government sought in this case is remedial and not punitive. Section 17 of the Act prohibits the court from entering any order in this suit for payment to the employees of the overtime wages the appellees have withheld from them. As the Supreme Court said in Mitchell v. Lublin, McGaughy and Associates, 358 U.S. 207, 214, 79 S.Ct. 260, 265, 3 L.Ed.2d 243: "We fail to see what undue burden will be placed on respondent by the issuance of an injunction * * *." Such injunction imposes no new restrictions upon the employers as it forbids only what is forbidden by statute. If they comply with the law they lose nothing by the injunction.
 
 
 22
 On the other hand, as this Court said in Lenroot v. Interstate Bakeries Corp., 146 F.2d 325, 327: "* * * Section 17 of the Act contemplates that the district courts shall exercise the judicial power in aid of the administrative power. * * * The [Department] can not carry the burden alone. * * * The court should not administer section 17 [the injunction provision of the Act] grudgingly." The discretion to grant or withhold injunctions for enforcement "must be exercised in the light of the objective of the Act" and we conclude we cannot sustain a denial of injunction in view of the record of the disregard for the law and evasions of it by appellees in this case.
 
 
 23
 Reversed with direction to enter decree of injunction.
 
 
 
 Notes:
 
 
 [1]
 Act of June 25, 1938, c. 676, 52 Stat. 1060, as amended by the Fair Labor Standards Amendments of 1949, c. 736, 63 Stat. 910, 29 U.S.C.A. § 201 et seq
 
 
 [2]
 See Mitchell v. Hodges Contracting Co., 5 Cir., 238 F.2d 380, 381-382, for a summary of cases sustaining and rejecting other trial courts' evaluations of the need for injunctive relief. Although that Court sustained the trial court the principles stated by them are generally applicable in these cases. "Where these [factors determining probability of future compliance or violation] have been properly evaluated, the action of the Trial Court, whether granting or denying an injunction, will be sustained. But where this has not been the case, reviewing courts have not been slow to act by ordering the issuance of injunction." (Original footnotes are omitted). See also Tobin v. Anthony-Williams Mfg. Co., 8 Cir., 195 F.2d 547, 551; Tobin v. Johnson, 8 Cir., 198 F.2d 130, 133, certiorari denied Johnson v. Durkin, 345 U.S. 915, 73 S.Ct. 726, 97 L.Ed. 1349; Mitchell v. Hausman, 5 Cir., 261 F.2d 778, 780; Walling v. Panther Creek Mines, 7 Cir., 148 F.2d 604