**James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,**

v.

**EMALA & ASSOCIATES, INC., Appellee.**

**No. 7910.**

United States Court of Appeals Fourth Circuit.

Argued Nov. 16, 1959.

Decided Jan. 7, 1960.

782

See publication Words and Phrases, for other judicial constructions and definitions of "Production of Goods for Commerce".

---

Beate Bloch, Atty., United States Dept. of Labor, Washington, D. C. (Harold C. Nystrom, Acting Solicitor of Labor, Bessie Margolin, Asst. Solicitor, Washington, D. C., and Ernest N. Votaw, Regional Atty., United States Dept. of Labor, Chambersburg, Pa., on brief), for appellant.

C. Victor McFarland, Baltimore, Md. (Leonard A. Vadala, and Vadala & McFarland, Baltimore, Md., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

SOBELOFF, Chief Judge.

The Secretary of Labor brought an action against Emala & Associates, Inc., to recover for James L. Presson, one of its employees, unpaid overtime compensation allegedly due him. The defendant had contracted to supply fill dirt for the construction of improvements to the interstate highway system, namely, a section of the Baltimore County Beltway, adjacent to Baltimore City, and the approaches to the Golden Ring Bridge on the Pulaski Highway. These improvements were designed to link U. S. Routes No. 1 and No. 40 and Maryland Route No. 2.

During the first part of the period for which extra compensation is sought, Presson's work consisted of hauling fill dirt from the defendant's borrow pit to the fill site of the beltway. Later he operated a bulldozer to level off loads of earth dumped by others employed by the defendant at that location. He also was engaged, part of the time in question, in leveling off earth dumped at the approaches linking the Golden Ring Bridge with the highway. It is argued that the purpose of the leveling done by Presson was to clear the way for oncoming delivery trucks. Accepting this as true, it cannot be denied that the "prime" or rough grading done by him was a further step towards the ultimate completion of the projects. The fill dirt deposited and leveled by Presson thus was incorporated as an integral part of the improvements under construction; it became the roadbed itself.

■ The Fair Labor Standards Act [29 U.S.C.A. § 201 et seq.], under which the Secretary proceeded, covers employees "engaged in commerce or in the production of goods for commerce." The Secretary maintains that Presson's activities constituted both commerce and the production of goods for commerce. The defendant denies both contentions, and relies particularly on certain language in § 16(c) of the Fair Labor Standards Act [29 U.S.C.A. § 216(c)]. This section, which authorizes the Secretary to bring an action on behalf of an underpaid employee who is covered by the Act, includes the provision:

"* * * That this authority to sue shall not be used by the Secretary of Labor in any case involving an issue of law which has not been settled finally by the courts, and in any such case no court shall have jurisdiction over such action or proceeding initiated or brought by the Secretary of Labor if it does involve any issue of law not so finally settled. * * *"

Defendant's position is that to satisfy the above requirement as to jurisdiction, before a suit of the Secretary may be entertained by a court there must be pre-existing judicial precedents squarely in point. This the District Court quite properly rejected as extreme and unreasonable, saying that such insistence would virtually nullify the salutary provision for the recovery of unpaid compensation without expense to the claimant. Nevertheless, the court felt obliged in this case to dismiss the suit in order

to give effect to the restrictive provision against prosecution by the Secretary of suits involving "issues of law not so finally settled." This conclusion was reached after reviewing certain factual differences pointed out by the defendant which were said to distinguish the adjudicated cases from the one before it. While the court was careful not to intimate what its opinion would be on the merits of the claim, if the suit were one by the employee himself under § 16(b), or a proceeding for injunction under § 17, it was sufficiently impressed with the defendant's factual distinctions to observe that the contentions were made in good faith and were not frivolous. It also noted that the defendant's contentions were not answered by the plaintiff with cited legal precedents.

The defendant's good faith may be assumed, but we think the authoritative precedents have fully settled the coverage question. The distinctions emphasized by the defendant appear to us not legally significant, but present merely incidental factual variations. We shall briefly review the decided cases.

## I.

The leading case dealing with employees working directly upon an instrumentality of commerce is Overstreet v. North Shore Corp., 1943, 318 U.S. 125, 63 S.Ct. 494, 496, 87 L.Ed. 656, where the employer operated a toll road and drawbridge, integral parts of the interstate highway system. One of two employees there suing for minimum wages and overtime was engaged in repair work on the road and the drawbridge, while the other sold toll tickets. In holding that both were "engaged in commerce," and therefore within the protection of the Act, the Supreme Court said, 318 U.S. at pages 129–130, 63 S.Ct. at page 497:

" * * * Vehicular roads and bridges are as indispensable to the interstate movement of persons and goods as railroad tracks and bridges are to interstate transportation by rail. If they are used by persons and goods passing between the various States, they are instrumentalities of interstate commerce. * * * Those persons who are engaged in maintaining and repairing such facilities should be considered as 'engaged in commerce' * * * because without their services these instrumentalities would not be open to the passage of goods and persons across state lines. * * * "

There, the Supreme Court flatly held that persons engaged in maintaining and repairing roads and bridges are engaged in commerce.

In Mitchell v. C. W. Vollmer & Co., 1955, 349 U.S. 427, 429–430, 75 S.Ct. 860, 862, 99 L.Ed. 1196, where the Court held that employees working on the construction of an earthwork embankment and concrete platform for a canal lock were engaged in commerce, the following test was set forth:

" * * * The test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity. * * * Repair of facilities of interstate commerce is activity 'in commerce' within the meaning of the Act as we held in Fitzgerald Construction Co. v. Pedersen, 324 U.S. 720, 65 S.Ct. 892, 89 L.Ed. 1316. And we think the work of improving existing facilities of interstate commerce, involved in the present case, falls in the same category."

This test was later applied in Mitchell v. Lublin, McGaughy & Asso., 1959, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243, where it was held that draftsmen, fieldmen, clerks and stenographers, working for an employer who designed and planned construction projects, such as widening of streets, relocation of radio and television facilities, paving of airplane taxiways and parking aprons, and sewerage systems, were engaged in commerce. Most of these employees did not

even go to the site of the proposed construction.

Certainly, Presson's work meets the test prescribed by the Supreme Court. Hauling fill dirt to a road site, and leveling it there, is "so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it. * * *" For other cases involving work related to a facility of interstate commerce, where the employee was held to be engaged in commerce, see: Fitzgerald Construction Co. v. Pedersen, 1945, 324 U.S. 720, 65 S.Ct. 892, 89 L.Ed. 1316 (employee engaged in construction of new abutments under two bridges); Walling v. McCrady Const. Co., 3 Cir., 1946, 156 F.2d 932 (employees working on public roads and bridges, their jobs including the replacement of old paving, construction of curbing, sidewalk and drainage facilities, relocation of a portion of a road, and construction of new bridges and approaches to them); Bennett v. V. P. Loftis Co., 4 Cir., 1948, 167 F.2d 286 (night watchman of a new bridge under construction); Archer v. Brown & Root, Inc., 5 Cir., 1957, 241 F. 2d 663 (employees building a causeway over a lake, and others installing a field plant adjacent to the construction site); Crook v. Bryant, 4 Cir., 1959, 265 F.2d 541 (night watchman and janitor, who answered night telephone calls for a wrecking company which had contracted to furnish 24-hour wrecker and towing service on the West Virginia turnpike).

## II.

■ Since we think it clear, under the test set forth in the above cases, that Presson was engaged in commerce by hauling and leveling earth at the two road sites, it is unnecessary to rest the decision on the other ground, namely that he was engaged in the production of goods for commerce. However, we are of the opinion that when Presson hauled fill dirt from the borrow pit to the beltway construction site, he was engaged in the production of such goods for commerce.[1] In Alstate Construction Co. v. Durkin, 1953, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745, an employee working in the production of amesite, a bituminous concrete road surfacing mixture, was held to be engaged in the production of goods for commerce; and in Thomas v. Hempt Bros., 1953, 345 U.S. 19, 73 S.Ct. 568, 97 L.Ed. 751, an employee who quarried stone and used it to make cement, which his employer hauled to interstate roads, was likewise considered so engaged. Like amesite and cement, which constitute the surface, fill dirt, which becomes the sub-surface, is widely used in road building. We fail to discover any differences warranting a legal distinction whereby, while the former products fall into the classification of "goods for commerce," the latter product does not.

The employer insists that earth is significantly different from other products used in building roads, such as sand, gravel, asphalt, cement, crushed rock, etc. In fact, it is suggested that fill dirt is not a product at all. It urges that cases in which articles were held to be in commerce are distinguishable, for they all involve products requiring some processing, after which they are peculiarly suited for road construction and similar projects, while fill dirt is said to be a raw material having many other uses. We find in this no real distinction, as all are materials having monetary value, which are useful in the construction of roads and for other purposes. Yet they are all capable of becoming integral parts of roads. Earth in its original place, as it is said, may not be valuable as a distinct commodity, and becomes such only when moved to a place where it can be used. But this is also true of trees, minerals or other raw materials. When brought to the place where they are needed, they are not only commodities but

1. In the District Court, as in the argument of the appeal, the employer concentrated upon the issue of "production of goods for commerce," rather than whether Presson was "engaged in commerce." This doubtless accounts for the District Judge's dealing primarily with the former question.

their production may be for "commerce." See: Tobin v. Johnson, 8 Cir., 1952, 198 F.2d 130 (rock quarried for roads and dikes held to be goods produced for commerce); Emulsified Asphalt Products Co. v. Mitchell, 6 Cir., 1955, 222 F.2d 913 (employees producing asphalt for highways held to be covered by the Act); Mitchell v. Raines, 5 Cir., 1956, 238 F.2d 186 (production of lumber for use in maintaining and repairing highways considered production of goods for commerce); McComb v. Carter, 8 WH Cases 498, 16 L.C. (CCH) No. 64, 964 (E.D. Va., 1948, not officially reported) (hauling of sand and gravel to highway sites held production of goods for commerce).

It is also contended that the sale of fill dirt, because of its very nature, must be confined to a local operation, and therefore, because of the plaintiff's own Interpretative Bulletin, coverage does not extend to employees producing it.[2] Why hauling fill dirt should be considered more local than hauling rock, sand, or gravel, we do not see. In any event, we think the bulletin does not support the defendant's position, but rather opposes it. The bulletin distinguishes between a supplier who directly contracts to furnish a substantial amount of goods for use in the construction of an instrumentality of commerce on the one hand, and on the other a supplier whose wares happen incidentally to be so used. An example of the situation contemplated by paragraph (4) of the bulletin would be where a company had contracted to paint the lines down the center of a highway, and went to a local paint supplier to buy some paint. Under (4), the employees of the paint supplier would not necessarily be covered by the Act because someone had come into the store and bought paint which was used on a highway. Fill dirt which goes into the construction of interstate roads is similar to sand, gravel, crushed rock, or cement so used, and therefore its production would seem to fall within paragraph (3) rather than (4) of the bulletin.[3]

The numerous decisions referred to have settled the issue of coverage in this case in favor of the view that the overtime provisions of the Fair Labor Standards Act extend to one in Presson's position. No unsettled issue of law was involved, and the District Court was in error in dismissing the complaint for lack of jurisdiction.

Reversed and remanded.

---

2. The Bulletin, July 31, 1958 (29 CFR, 1958 Supp., § 776.27, (d) (3) and (4), is as follows:

"(3) Coverage also extends to employees who produce sand, gravel, asphalt, cement, crushed rock, railroad ties, pipes, conduits, wires, concrete pilings and other materials which are to be used in the construction of instrumentalities which serve as the means for the interstate movement of goods or persons."

"(4) This does not mean, however, that in every case where employees produce such materials which are used within the State in the maintenance, repair, or reconstruction of an instrumentality of commerce, the production of such materials is necessarily considered as production 'for' commerce. A material supply company may be engaged in an independent business which is essentially local in nature, selling its materials to the usual miscellany of local customers without any particular or purpose of supplying materials for the maintenance, repair, or reconstruction of instrumentalities of commerce, and without any substantial portion of its business being directed to such specific uses. Employees of such an 'essentially local business' are not covered by the act merely because as an incident to its essentially local business, the company, on occasion, happens to produce or supply some materials which are used within the State to meet the needs of instrumentalities of commerce."

3. As we think the bulletin favors the plaintiff's position, rather than opposes it, it is unnecessary to consider the questions raised in the argument of the appeal as to whether the plaintiff is bound by his own interpretation, or what weight should be given it. The general subject is dealt with in Skidmore v. Swift & Co., 1944, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124.